PEOPLE v KYLLONEN

PEOPLE v FRUM

Docket Nos. 58026, 58169. Argued October 4, 1977 (Calendar Nos. 3, 4).—Decided January 23, 1978.

These cases raise the question whether under MCLA 750.535; MSA 28.803 a thief may be convicted of buying, receiving or aiding in the concealment of the property he has stolen or whether the coverage of the statute is limited to persons who assist the thief or others in the concealment of the stolen property.

David Kyllonen was convicted by a jury in Iron Circuit Court, Ernest W. Brown, J., of buying, receiving or aiding in the concealment of stolen goods. The defendant confessed to taking a vehicle without the owner's permission from his place of employment in Lansing and driving it to Florida and then to a farm in Iron County, where he decided to stay. Other men at the farm knew the truck was stolen and one of the men was stripping parts off the vehicle. The defendant presented an insanity defense at trial. The Court of Appeals, Danhof, P. J., and Quinn and D. E. Holbrook, Jr., JJ., affirmed (Docket No. 21679). Defendant appeals.

Charles V. Frum was convicted by a jury in Oakland Circuit Court, Farrell E. Roberts, J., of buying, receiving or aiding in the concealment of stolen goods. The evidence indicated that the defendant drove a car away without the owner's permission and that he was arrested while driving the car with license plates stolen from another vehicle. The defendant argued that if there was a thief, he was it, and that he could not therefore be convicted of buying, receiving or aiding in the concealment of the car. The Court of Appeals, N. J. Kaufman, P. J., and

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 66 Am Jur 2d, Receiving Stolen Property § 4.

[2–4] 73 Am Jur 2d, Statutes § 293 et seq.

[5, 7–10] 50 Am Jur 2d, Larceny § 9 et seq.

[6] 50 Am Jur 2d, Larceny § 151.

[7–10] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 3 et seq.

T. M. Burns and M. F. Cavanagh, JJ., affirmed in an unpublished per curiam opinion (Docket No. 23564). Defendant appeals. *Held:*

1. The original English statute which proscribed the crime of buying or receiving stolen property was enacted to close a loophole in the common law which permitted persons who helped thieves dispose of their illegal booty to escape serious criminal liability. There is no indication that the statute was also intended to be an alternative provision under which the thief could be convicted. The Michigan statute retained the basic form of the English statute but added the alternative element of aiding in the concealment of stolen property. The thrust of the statutory language is clear on its face and consistent with its historical development. It is directed against those who assist the thief or others in the disposition or concealment of stolen property.

2. The everyday meaning of the language excludes the person who committed the larceny. To interpret the words "buys", "receives", or "aids in the concealment" of stolen property to mean buying or receiving from one's self or aiding one's self in concealment needlessly corrupts a forthright and harmonious statute. Other statutes proscribe larcenous activities.

3. The addition to the statute of the words "aids in the concealment of" was intended to prevent persons from rendering important, efficient services to a thief or other felons in concealing stolen property. Limiting the application of these words does no violence to the result sought by enactment of the statute. The statute should be construed to exclude thieves who conceal property they have stolen. Thieves are to be punished for larceny. Persons who help thieves or others conceal stolen property are to be punished for aiding in the concealment of stolen property.

4. The prosecution would not be prohibited from reprosecuting a defendant charged with buying, receiving or aiding in the concealment of stolen property on the larceny charge, even assuming the two crimes could be said to arise from the same transaction, if a defendant's revelation, in midtrial or on appeal, that he was the thief was truly a surprise. If the revelation comes in midtrial, the prosecutor may ask permission to amend the information to include a count of larceny.

5. A sale or other transfer of stolen property by the thief marks the end of the original crime of larceny. After this, aid rendered by the thief to someone else which has a tendency to conceal the property from the owner's observation is aid rendered to another and may be punishable under the statute. The

transferee may become the principal felon, guilty of buying or receiving, as the case may be, and the thief may become his assistant. Similarly, if the thief transfers stolen property and then buys or receives it back, he may be prosecuted and convicted under the statute.

6. The prosecution may charge the defendant with both larceny and buying, receiving or aiding in the concealment of stolen property. The factfinder may then convict the defendant of either crime or acquit him altogether, depending upon its perception of the evidence presented.

7. In each of the instant cases the jurors were not informed that they must acquit the defendant of buying, receiving or aiding in the concealment of stolen property if they believed that the defendant was the thief. Therefore, they may have rendered verdicts of guilty even though they believed that the defendant in each case was the thief. The defendants' convictions must therefore be reversed.

8. The Court declines to consider the argument that the "same transaction" test bars reprosecution of the defendants because it is premature at this time. Unless and until the prosecutors in these two cases decide to reinstitute proceedings against these defendants, the question does not arise except in the abstract.

Reversed.

66 Mich App 467; 239 NW2d 410 (1976) reversed.

1. RECEIVING STOLEN GOODS—LARCENY—STATUTES—CONSTRUCTION.

The language of the statute which prohibits buying, receiving or aiding in the concealment of stolen goods does not reasonably encompass the case of a thief who conceals property which he had stolen (MCL 750.535; MSA 28.803).

2. CRIMINAL LAW—STATUTES—CONSTRUCTION.

Penal statutes are to be strictly construed; however, this rule does not require rejection of that sense of the words which best harmonizes with the overall context of the statutes, and the evil sought to be corrected and the objects of the law.

3. STATUTES—CONSTRUCTION—HISTORICAL CONTEXT.

The courts in construing statutory language which is obscure or of doubtful meaning may, with propriety, recur to the history of the time when it was passed and of the act itself in order to ascertain the reason as well as the meaning of its provisions; courts may also consider all conditions and circumstances surrounding its enactment in the light of the general policy of previous legislation on the same subject.

4. RECEIVING STOLEN GOODS—LARCENY—STATUTES—CONSTRUCTION.

The statute concerning receiving stolen goods should be construed to exclude thieves who conceal property that they have stolen; under the statutory scheme thieves are to be punished for larceny; persons who help thieves or others conceal stolen property are to be punished for aiding in the concealment (MCL 750.356, 750.535; MSA 28.588, 28.803).

5. LARCENY—ELEMENTS OF CRIME—CONCEALING STOLEN GOODS.

Larceny includes as an essential element of the crime an intent to deprive the owner of his property permanently; therefore indefinite concealment of stolen goods incidental to the theft is a part of and punishable as the crime of larceny rather than under the statute prohibiting receiving or concealing stolen goods (MCL 750.356, 750.535; MSA 28.588, 28.803).

6. RECEIVING STOLEN GOODS—LARCENY—REPROSECUTION OF DEFEND-
   ANT—SAME TRANSACTION—AMENDED INFORMATION.

Reprosecution on an amended charge of larceny of a defendant originally charged with buying, receiving or aiding in the concealment of stolen goods who reveals during trial on the charge of receiving stolen goods or on appeal that he, in fact, stole the same goods is not prohibited, even assuming the two charges can be said to arise from the same transaction, where the defendant's revelation that he was the thief was truly a surprise (MCL 750.356, 750.535, 767.76; MSA 28.588, 28.803, 28.1016).

7. RECEIVING STOLEN GOODS—LARCENY—SEPARATE CRIMES.

A sale or other transfer of stolen property by the thief marks the end of the crime of larceny; aid rendered by the thief after the transfer which has a tendency to conceal the property from the owner's observation is aid rendered to another and may be punishable under the statute which prohibits concealing stolen goods (MCL 750.356, 750.535; MSA 28.588, 28.803).

8. RECEIVING STOLEN GOODS—LARCENY—SEPARATE CRIMES.

A thief who transfers stolen property and then buys or receives it back from the first transferee can be prosecuted for and convicted of the second transfer under the statute prohibiting receiving stolen goods (MCL 750.535; MSA 28.803).

9. RECEIVING STOLEN GOODS—LARCENY—INDICTMENT AND INFORMA-
   TION—MULTIPLE COUNTS.

The prosecution should charge a defendant who might, according

to the evidence available before trial, be either a thief or the person who bought, received or aided in the concealment of the stolen property with both crimes and prosecute them together in a single proceeding; the factfinder may convict the defendant of either crime or acquit him altogether, depending upon its perception of the evidence (MCL 750.356, 750.535, 767.63, 767.69; MSA 28.588, 28.803, 28.1003, 28.1009).

10. RECEIVING STOLEN GOODS—LARCENY—SEPARATE CRIMES—INSTRUCTIONS TO JURY.

A conviction of buying, receiving or aiding in the concealment of stolen goods must be reversed when the defendant was only charged with that crime and not also with larceny; there was evidence that the defendant was the thief of the goods and the jurors were not instructed that they must acquit the defendant of receiving stolen goods if they believed that he was, in fact, the thief (MCL 750.356, 750.535; MSA 28.588, 28.803).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, for the people.

*Torger Omdahl,* Prosecuting Attorney, and *Mark I. Leach,* Assistant Attorney General, for the people in *Kyllonen.*

*L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel (by *James L. McCarthy,* Assistant Appellate Counsel), for the people in *Frum.*

*State Appellate Defender Office* (by *Barbara R. Levine; Kim R. Fawcett* and *Michael E. Turner,* of counsel) for defendant Kyllonen.

*Smith, Magnusson & Chartrand* for defendant Frum.

COLEMAN, J. These separate criminal cases present a single narrow and unique question of statutory interpretation: When the Legislature enacted

MCLA 750.535; MSA 28.803,[1] which proscribes, *inter alia,* "aid[ing] in the concealment of * * * stolen * * * property", did it intend to provide an alternate statute under which thieves could be convicted; or did it only intend to cast a net of criminal liability over persons who assist thieves or others in the concealment of stolen property?

I

Defendant Kyllonen was charged in a one-count information with buying, receiving or aiding in the concealment of stolen property. The evidence at his trial showed that he worked as a maintenance man at a Lansing automobile dealership. He did not appear for work on January 28, 1974. Later that day, the dealership discovered that a 1974 pickup truck was missing from its inventory. Two weeks later, Kyllonen was seen driving the truck in Iron River, Michigan. He was arrested and the truck was seized. He admitted in a signed confession that he had taken the truck from the dealership without permission and that he had parked the truck on a friend's farm in Iron River, knew that the friend was stripping parts off the truck and was present when the friend made a telephone call to Chicago in an attempt to arrange a sale of the truck. At trial he testified that he had

---

[1] MCLA 750.535; MSA 28.803 provides in subsection (1):

"A person who buys, receives, or aids in the concealment of any stolen, embezzled, or converted money, goods or property knowing the same to have been stolen, embezzled, or converted, if the property purchased, received or concealed exceeds the value of $100.00, is guilty of a felony, punishable by imprisonment for not more than 5 years, or by a fine of not more than $2,500.00, or both. If the property purchased, received, or concealed is of a value of $100.00 or less, the person is guilty of a misdemeanor. On a third or subsequent conviction under this section the person is guilty of a felony, punishable as herein provided, although the value of the property purchased, received, or concealed did not exceed $100.00."

taken the truck and during the ensuing two weeks he had driven to Florida and back to Michigan. He parked the vehicle at the Iron River farm. He had discussed "getting rid of the truck" with his friend. In the meanwhile, he used it for his own purposes. His defense was insanity stemming from extensive physical and psychological trauma that he had suffered during two tours of combat duty in South Vietnam. The prosecutor emphasized the fact that defendant was not charged with the taking, but was charged with concealing the truck. The jury returned a verdict of guilty as charged.

Defendant Frum also was charged in a one-count information with buying, receiving or aiding in the concealment of stolen property. The evidence at his trial showed that he met the complainant at a bar and arranged to take her out the following evening. When he arrived to pick her up, she told him she had changed her mind and no longer wished to go out. He then indicated that he had left his wallet in her car the night before and asked if he could go retrieve it. She said "yes" and gave him her keys. When, after 20 minutes, he had not returned, she went to the parking lot and discovered that both he and her car were gone. Approximately two weeks later Frum was arrested in the car after a high speed chase following a hit and run accident. He gave the arresting officer a false name and said that he had purchased the car from the complainant. The car's original license plates had been removed and replaced with plates that were stolen. At trial the complainant testified that she had not given Frum permission to take the car. The jury returned a verdict of guilty as charged.

On appeal each defendant argued that MCLA 750.535; MSA 28.803 does not apply to thieves who

conceal the property they have stolen. Instead, its coverage is limited to persons who assist thieves or others in the concealment of stolen property.

The Court of Appeals panel which heard defendant Kyllonen's case unanimously rejected this argument and affirmed his conviction.[2] The panel recognized that under prior decisions of this Court, the defendant could not be convicted of both larceny and buying, receiving or aiding in the concealment of stolen property.[3] However, the panel reasoned, so long as the defendant had not been convicted of larceny, he could be convicted of buying, receiving or aiding in the concealment of stolen property. The panel cited two prior Court of Appeals decisions in support of this conclusion.[4]

A different Court of Appeals panel unanimously affirmed defendant Frum's conviction.[5] It reasoned that Frum had not been proven to be the thief beyond a reasonable doubt and that although larceny and buying, receiving or aiding in the concealment of stolen property are mutually exclusive crimes, prosecutors can exercise their discretion and charge either one.

Leave to appeal was granted in each case to determine the scope of criminal liability under MCLA 750.535; MSA 28.803 and to clarify the procedures to be followed in cases involving possible charges of both larceny[6] and buying, receiving or aiding in the concealment of stolen property.

---

[2] 66 Mich App 467; 239 NW2d 410 (1976).

[3] See People v Allen, 252 Mich 553; 233 NW 412 (1930).

[4] People v Simon, 23 Mich App 64; 178 NW2d 106 (1970), and People v Randall, 42 Mich App 187; 201 NW2d 292 (1972).

[5] Docket No 23564 (February 17, 1976).

[6] See MCLA 750.356; MSA 28.588:

"Any person who shall commit the offense of larceny, by stealing, of the property of another, any money, goods or chattels, or any bank note, bank bill, bond, promissory note, due bill, bill of exchange or other bill, draft, order or certificate, or any book of accounts for or concerning money or goods due or to become due, or to be delivered,

## II

The history leading to the enactment of MCLA 750.535; MSA 28.803 is an appropriate place to begin the determination of the statute's scope.[7]

At common law, thieves could be prosecuted for larceny but persons who assisted thieves in disposing of stolen property could only be convicted of misprision of felony[8] or compounding a felony.[9] The two crimes were misdemeanors and the paltry penalties prescribed did little to deter persons from engaging in the societally harmful business of providing a marketplace for stolen goods. There were no separate substantive felony offenses proscribing such conduct. Persons helping to provide the channel to such a marketplace or providing the marketplace itself could not usually even be convicted as accessories after the fact to the larceny. To be guilty of that crime, one had to harbor the thief, not just his stolen goods.

In response to this situation, Parliament tried to close the loophole in the common law by enacting

or any deed or writing containing a conveyance of land, or any other valuable contract in force, or any receipt, release or defeasance, or any writ, process or public record, if the property stolen exceed the value of $100.00, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by fine of not more than $2,500.00. If the property stolen shall be of the value of $100.00 or less, such person shall be guilty of a misdemeanor."

And MCLA 750.413; MSA 28.645:

"Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years."

[7] *See, generally,* LaFave & Scott, Criminal Law, p 682, and Perkins, Criminal Law (2d ed), p 322.

[8] Failing to report the commission of a known felony.

[9] Agreeing not to report the commission of a known felony in exchange for some valuable consideration.

a statute providing that a person who bought or received stolen property could be convicted as an accessory after the fact to the larceny.[10] However, this statute was difficult to enforce because accessories could only be convicted after the principal felon (here, the thief) had been apprehended, tried and convicted. To remedy the problem, Parliament enacted another statute abolishing this procedural requirement.[11] Finally, Parliament completely severed the umbilical cord between larceny and buying or receiving stolen property by enacting a statute making the latter a separate and distinct substantive felony offense.[12]

This early history reveals that the statutory crime of buying or receiving stolen property was originally designed and intended to proscribe conduct by persons who helped thieves dispose of their illegal booty. It was born out of a need to change the common law which permitted these persons to escape serious criminal liability. The statutory development was marked by a series of refinements directed towards prosecution and conviction of these offenders. Nowhere is there an indication that the statute also was intended to be an alternate provision under which thieves could be convicted.

The English statute proscribing buying or receiving stolen property crossed the Atlantic and became a fixture of American jurisprudence. In Michigan, it retained its basic form but its scope was somewhat broadened. The Revised Statutes of 1846, title 30, ch 154, § 20 stated:

"Every person who shall buy, receive or *aid in the*

[10] 3 W & M, c 9, § 4 (1691).
[11] 1 Anne, Stat 2, c 9, § 2 (1702).
[12] 7 & 8 Geo IV, c 29, § 54 (1827).

*concealment of* any stolen money, goods or property, knowing the same to have been stolen, shall be punished by * * * ." (Emphasis added.)

Likewise, Rev Stat 1846, title 30, ch 154, § 23 stated:

"In any prosecution of the offence of buying, receiving or *aiding in the concealment of* stolen money or other property, it shall not be necessary to aver, nor on the trial thereof to prove, that the person who stole such property has been convicted." (Emphasis added.)

Although legislative intent often is elusive, the thrust of the statutory wording is clear on its face and consistent with its historical development. It is directed towards those who assist the thief or others in the disposition or concealment of stolen property. The everyday understanding of the language employed excludes the person who committed the larceny.

To interpret the words "buys", "receives" or "aids in the concealment" of stolen property to mean buying or receiving from one's self or aiding one's self in concealment is needlessly to corrupt a forthright and harmonious statute.[13] Other statutes proscribe larcenous activities.

---

[13] The fact that some other states have broader statutes which encompass both the thief and those assisting in the disposition or concealment of stolen property does not serve to change Michigan's statutory scheme. For example, California Penal Code, § 496(1), employs the operative language "buys * * * receives * * * *conceals, sells, withholds* or aids in concealing, selling or withholding". Seventeen other states have adopted the language "receives, *retains* or *disposes*" from Model Penal Code (Proposed Official Draft, 1962), § 223.6. New York Penal Law, § 165.60 states clearly:

"In any prosecution for criminal possession of stolen property, it is no defense that:

* * *

"(2) The defendant stole or participated in the larceny of the property." (Emphasis added.)

Early Michigan caselaw confirms the fact that it was the gap in the English statute which provided the stimulus to add the words "or aids in the concealment" to the Michigan statute. In *People v Reynolds,* 2 Mich 422 (1852), after describing the development of the English statute, the Court said:

"Our statute has enlarged this * * * offense, by making persons who shall *aid* the principal felon in the concealment of the property stolen, equally guilty with him who shall *receive* such property.

"This was the object of the statute, and was intended to embrace a class of offenses which could not [otherwise] have been reached * * * ; for important aid and assistance could have been rendered to the principal felon in enabling him to conceal the stolen property, without having been the receiver, so as to have subjected him to a prosecution on that account * * * .

* * *

"The evil intended to be guarded against by the enactment of [this] law was, to prevent persons from rendering important, efficient services to a felon, in aiding him in the concealment of stolen property * * * ." (Emphasis in original opinion.)

The Court then went on to hold that in order to make "the remedy commensurate with the evil", *id.* 424, any aid rendered to the principal felon by the defendant "which would have a tendency to conceal [the stolen property] from the observation of the owner", *ibid.,* was proscribed by the word "concealment" as used in the statute.

The pertinent language of the statute has not been changed since the *Reynolds* decision. It still only proscribes *aiding* in the concealment of stolen property. This language does not reasonably encompass a thief who conceals property he has stolen, for example, by placing a stolen bracelet in his coat pocket.

III

In *People v Hall,* 391 Mich 175, 189–190; 215
NW2d 166 (1974), this Court described how penal
statutes are to be interpreted, saying

" * * * penal statutes are to be strictly construed
[citations omitted]. However, * * * the fact that these
types of statutes are narrowly construed does not re-
quire rejection of that sense of the words which best
harmonizes with the overall context of the statutes and
the end purpose sought to be achieved by such legisla-
tion. With criminal statutes, such end purpose is the
evil sought to be corrected and the objects of the law
sought to be effectuated [citation omitted]."

Then the Court quoted at p 191 some words from
*Genesee Trustee Corp v Smith,* 102 F2d 125, 126
(CA 6, 1939), which obliquely apply. (If the word-
ing of MCLA 750.535; MSA 28.803 is not "ob-
scure", usage and subsequent judicial opinions
have made it so.)

"Where the language of a statute is obscure or of
doubtful meaning, the courts in construing it may, with
propriety, recur to the history of the times when it was
passed and of the act itself in order to ascertain the
reason as well as the meaning of its provisions and it
may also consider all conditions and circumstances
surrounding its enactment in the light of the general
policy of previous legislation on the same subject [cita-
tions omitted]."

The precepts above as applied to the case at bar
lead to the conclusion that the addition to the
statute of the words "aids in the concealment of"
was intended "to prevent persons from rendering
important, efficient services to a felon, in aiding
him in the concealment of stolen property" *(Rey-
nolds, supra,* 424). The object was to make liable

*persons who helped thieves or others conceal* sto-
len property as well as those persons already
covered by the statute who *bought* or *received*
stolen property. Limiting the application of these
words does no violence to the end result sought to
be achieved by the statute or the objectives sought
to be effectuated. Also, this interpretation is con-
sistent with the general policy of all previous
legislation on this subject.

Therefore, the statute should be strictly con-
strued to exclude thieves who conceal property
they have stolen. Under the Michigan statutory
scheme, thieves are to be punished for larceny.[14]
Persons who help thieves or others conceal stolen
property are to be punished for aiding in the
concealment of stolen property.

## IV

In each case at bar the prosecution has antici-
pated a number of potential problems under the
foregoing interpretation. However, the problems
have solutions.

The prosecution first contends that under to-
day's decision a defendant charged only with buy-
ing, receiving or aiding in the concealment of
stolen property may escape all criminal liability
by simply revealing in midtrial or on appeal after
a conviction that he was the thief and therefore
not amenable to prosecution for buying, receiving
or aiding in the concealment of stolen property.
Apparently, this alarm is based on the assumption
that reprosecution would be barred by the "same

---

[14] Larceny includes as an essential element an intent to deprive the
owner of his property permanently, indicating that indefinite conceal-
ment incidental to the theft is a part of and punishable under this
crime.

transaction" test adopted in *People v White,* 390 Mich 245; 212 NW2d 222 (1973).

Even if the crimes of larceny and buying, receiving or aiding in the concealment of stolen property could be said to arise from the same transaction, the prosecution would not be prohibited from reprosecution on the theft charge if the defendant's revelation that he was the thief was truly a surprise.[15] In *White, supra,* 258, fn 6, this Court said:

"We are aware that in certain situations, strict application of the same transaction test could lead to the anomalous result of foreclosing prosecution for an offense where the state had made a diligent and good faith effort to protect the defendant's constitutional rights.

" 'For example, where a crime is not completed or not discovered, despite diligence on the part of the police [and the prosecutor], until after the commencement of a prosecution for other crimes arising from the same transaction, an exception to the "same transaction" rule should be made to permit a separate prosecution.' [Citation omitted.]"

The prosecution also contends that today's decision will prohibit the prosecution of thieves who sell or otherwise transfer their stolen property to another person and then help that person conceal it.

That conclusion is not warranted. A sale or other transfer of stolen property by the thief marks the end of the original crime of larceny. After this, aid rendered by the thief which has a tendency to conceal the property from the owner's

---

[15] If the revelation of theft by the defendant is not a surprise, we anticipate that a diligent prosecutor would include both counts in the information.

If the defendant's revelation comes in mid-trial, the prosecutor may ask the court's permission to amend the information to include a count of larceny. *See* MCLA 767.76; MSA 28.1016.

observation may be considered aid rendered to another and may be punishable under MCLA 750.535; MSA 28.803. The transferee may become the principal felon, guilty of buying or receiving as the case may be, and the thief may become his assistant. Similarly, if the thief transfers stolen property and then buys or receives it back, he may be prosecuted and convicted under this statute.

Further, the prosecution contends that today's decision requires proof beyond a reasonable doubt that the defendant was not the thief in order to secure a conviction for buying, receiving or aiding in the concealment of stolen property, and that this will be difficult to prove.

This problem will vanish if the prosecution charges the defendant with both larceny and buying, receiving or aiding in the concealment of stolen property.[16] The prosecution then may simply present its proofs and the factfinder may convict the defendant of either crime or acquit him altogether, depending upon its perception of the evidence.

## V

The final questions in this case are whether the defendants' convictions should be reversed and, if so, whether the defendants should be discharged or retried.

The people argue that the convictions should be affirmed because the jurors were free to believe the evidence produced in each case tending to

---

[16] MCLA 767.69; MSA 28.1009 specifically authorizes the prosecution to add an alternate count of larceny to any information charging a defendant with buying, receiving or aiding in the concealment of stolen property, and MCLA 767.63; MSA 28.1003 permits the prosecution to charge both of these crimes in any county into which the stolen property was transported, even if the larceny actually took place in another county.

show that the defendant aided in the concealment of stolen property and disbelieve the evidence tending to show that the defendant was the thief.

This argument would be acceptable if the jurors had been instructed that they must acquit the defendant of buying, receiving or aiding in the concealment of stolen property if they believed that the defendant was the thief. Because the jurors were not informed of this crucial legal fact, they may have rendered verdicts of guilty even though they believed that the defendant in each case was the actual thief. Therefore, the prosecution's argument must be rejected and the defendants' convictions must be reversed.

The defense argues that the "same transaction" test adopted by this Court in *People v White, supra,* bars reprosecution of the defendants and mandates their discharge. We decline to consider this argument at this time because it is premature. Unless and until the prosecutors in these two cases decide to reinstitute proceedings against these defendants, the question whether *White* bars reprosecution does not arise, except in the abstract. We prefer to wait for a concrete case in which this question is squarely presented before making a decision.

The Court of Appeals decision in each case is reversed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.