PEOPLE v WILBERT

Docket No. 49376. Submitted February 9, 1981, at Lansing.—Decided
    April 22, 1981.

    Clarence Wilbert was convicted of receiving and concealing stolen
        property, Saginaw Circuit Court, Fred J. Borchard, J. Defen-
        dant appeals, alleging several errors. *Held:*

        1. The trial court did not err in concluding that the defen-
        dant's consent was voluntary under the circumstances extant
        at the time defendant consented to the search of the premises
        where the stolen goods were concealed.

        2. The arrest of the defendant, without a warrant, was not
        illegal, because the police had probable cause to arrest and the
        exigent circumstances present were sufficient to circumvent the
        warrant requirement. Any statements made by the defendant
        which were the product of the arrest were therefore properly
        admissible into evidence.

        3. Instructions to the jury which allowed them to infer that
        the defendant possessed the requisite guilty knowledge but
        cautioned the jury that such an inference need not be made
        were proper. The instructions did not transfer the burden of
        proof to the defendant.

        4. Refusal of the trial court to instruct the jury, upon
        defendant's request, that they must acquit the defendant of
        receiving and concealing stolen property if they found that he
        had participated in the larceny was error. A defendant may not
        be convicted of receiving and concealing property that he stole,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures § 46.
[2] 29 Am Jur 2d, Evidence §§ 611, 613.
    68 Am Jur 2d, Searches and Seizures § 41 *et seq.*
[3] 21 Am Jur 2d, Criminal Law § 88.
    66 Am Jur 2d, Receiving and Transporting Stolen Property § 9.
[4] 75 Am Jur 2d, Trial § 602.
[5] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 9.
    75 Am Jur 2d, Trial § 720.
[6, 8] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 4.
[7] 21 Am Jur 2d, Criminal Law § 123.
[8] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 33.

and there was ample evidence in this case upon which the defendant could have been convicted as an aider and abettor of the larceny.

5. The question of whether the defendant may be retried is not ripe for decision.

6. The prosecution failed to endorse or produce an alleged res gestae witness. The evidence indicates that this witness was not a witness to the larceny but would be a res gestae witness in regard to the charge of receiving and concealing stolen goods. The prosecution shall be excused from endorsing and producing this witness only if defendant is retried solely on a charge of larceny.

Reversed and remanded.

1. Searches and Seizures — Consent to Search.
   A defendant's voluntary consent to a search precludes any later claim of illegality relative to the search.

2. Criminal Law — Evidence — Statements of Defendant.
   Statements made by a defendant following his arrest without a warrant were properly admissible into evidence where the police had probable cause to arrest the defendant on the charge of which he was eventually convicted and where exigent circumstances were present which were sufficient to circumvent the requirement of obtaining a warrant.

3. Criminal Law — Guilty Knowledge.
   Guilty knowledge means not only actual knowledge, but constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred.

4. Appeal — Jury Instructions.
   Jury instructions must be read as a whole, not extracted piecemeal from the transcript and assailed as causing reversible error.

5. Criminal Law — Jury Instructions — Receiving Stolen Goods — Guilty Knowledge.
   A jury instruction in which the jury was told that it could infer from the circumstances that the defendant knew that certain property was stolen and also told that such an inference need not be made was a proper instruction; the inference of guilty knowledge was merely a permissible inference and the instruction did not transform it into a presumption shifting the burden of proof to the defendant (CJI 26:1:04).

6. Criminal Law — Receiving Stolen Goods.

    A defendant may not be convicted of receiving and concealing property that he stole.

7. Criminal Law — Aiders and Abettors — Specific Intent.

    The aider and abettor of a specific intent crime, if not himself possessed of the requisite specific intent, must be shown to have rendered his aid and assistance to the principal actor with the knowledge that the principal himself possessed the intent necessary to be guilty of the crime.

8. Criminal Law — Jury Instructions — Receiving Stolen Goods.

    A trial court erred in refusing to instruct the jury that a defendant must be acquitted of the charge of receiving and concealing stolen property if the jury finds that the defendant participated in the theft of that property.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Annette M. Olejarz,* Assistant Prosecuting Attorney, for the people.

*Susan J. Smith,* Assistant State Appellate Defender, for defendant on appeal.

Before: Cynar, P.J., and J. H. Gillis and Allen, JJ.

Cynar, P.J. Following a jury trial, defendant was convicted of receiving and concealing stolen property, MCL 750.535; MSA 28.803, and was sentenced to from three to five years imprisonment. Defendant appeals as of right, raising five issues for this Court to review.

Defendant first argues that the trial court erred in concluding that: (1) defendant lacked standing to challenge the search of the premises in which the stolen goods were concealed; and (2) even assuming that defendant had standing to contest the search, his voluntary consent thereto vitiated any claim of illegality relative to the search. We

need not meet the former challenge, for even assuming, *arguendo,* that defendant had standing to challenge the legality of the search, under the totality of the circumstances extant at the time consent was given by defendant, said consent was voluntary. *People v Reed,* 393 Mich 342, 362-366; 224 NW2d 867 (1975), *cert den* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), *People v Gallagher,* 55 Mich App 613, 616-617; 223 NW2d 92 (1974), *lv den* 393 Mich 766 (1974). Having consented to the search, defendant cannot now complain about any alleged illegality with respect thereto.

Next, defendant claims that his warrantless arrest was illegal and that, therefore, all statements which he made which were the product of that arrest should have been excluded from admission into evidence at trial. We disagree. Defendant gave the arresting officers consent to enter the premises to effect a search. Upon discovery of the stolen liquor bottles within the dwelling, defendant was advised of his *Miranda*[1] rights. It was only at this point that defendant's freedom was restrained to such a significant extent that it could be said that he had been "seized" within the meaning of the Fourth Amendment. *People v Summers,* 407 Mich 432, 444-449; 286 NW2d 226 (1979), *cert gtd* — US —; 101 S Ct 265; 66 L Ed 2d 127 (1980), *People v Emanuel,* 98 Mich App 163, 172-176; 295 NW2d 875 (1980). At that time, the officers clearly had probable cause to arrest defendant on the charge of which he was eventually convicted, and exigent circumstances were present which were sufficient to circumvent the warrant requirement of the Fourth Amendment. Defendant's claim that the

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

exclusionary rule should have been employed is thus without merit.

As a third argument for reversal, defendant contends that the trial court's instruction relative to certain facts or circumstances from which the jury might infer that defendant had knowledge that the property was stolen was an impermissible burden-shifting instruction.

After instructing the jury on the elements of the crime with which defendant was charged and after defining the terms "stolen property", "receiving", and "concealing", the trial court instructed the jury as follows:

"Now, it is up to you to determine beyond a reasonable doubt that the defendant was in definite and conscious possession of the property in question here, and that said property was stolen. *These facts, if not explained, are ordinarily circumstances from which you may reasonably infer that the defendant had knowledge that the property was stolen.* However, you need not make that inference.

"Only the jury has the right to decide whether the facts and circumstances shown by the evidence in this case justifies *[sic]* an inference that the defendant had knowledge that the property was stolen." (Emphasis supplied.)

Defendant now claims that the above-quoted instructions, which were taken directly from CJI 26:1:04(1), (2), impermissibly shifted the burden of proof.

In the instant case, the jury was instructed that it must find, beyond a reasonable doubt, that: (1) defendant was in definite and conscious possession of the property; and (2) said property was stolen. Essentially, the jury was informed that, if it found those facts to be present, it *could* reasonably infer that another essential element of the crime, that

defendant had knowledge that the property was stolen, was present. The jury was then cautioned that it "need not make that inference".

It is clear that the jury did not need to draw such an inference in order to find the essential element of knowledge because defendant made admissions to the police, after his arrest, to the effect that: (1) he knew what was "going down" before it did; (2) he knew that the liquor was stolen because he was present when the larceny took place and he was aware of what had transpired; (3) defendant admitted seeing the stolen goods in the car used in the larceny immediately after the larceny; (4) defendant and the other participants drove to the address where the liquor was seized by police, carrying the bottles in the car; (5) defendant produced some of the stolen bottles for the police from within the house upon request; and (6) defendant admitted that he and the others knew of someone who was interested in procuring the contraband and was making arrangements to consummate that transaction. The element of knowledge thus could be established unaided by any inference. However, this does not affect the nature of the assignment of error made by defendant, which relates only to the aforementioned instruction.

In *People v White,* 22 Mich App 65, 68; 176 NW2d 723 (1970), the Court quoted from *People v Tantenella,* 212 Mich 614, 621; 180 NW 474 (1920):

"In *People v Tantenella* (1920), 212 Mich 614, the Court held that the evidence of the accused's guilty knowledge at the time he received the stolen property, or aided in its concealment, is generally to be collected from all the various circumstances of the case. The Court said:

" 'Guilty knowledge means not only actual knowledge,

but constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred. (Citations omitted.)

" 'While we have held *(Durant v People* [1865], 13 Mich 351) that mere possession cannot be used as evidence to show knowledge that the goods were stolen, we have also held that the fact of recent possession of stolen property, coupled with contradictory statements of the accused as to the possession of such property and aiding in concealing such property, was evidence of guilty knowledge. (Citations omitted.)' "

This Court also followed *People v Tantenella* in *People v Martinovich,* 18 Mich App 253; 170 NW2d 899 (1969), and *People v Keshishian,* 45 Mich App 51; 205 NW2d 818 (1973).

Defendant claims, however, that, based on two recent Supreme Court decisions, this Court should find the instructions to be erroneous. In *People v Wright,* 408 Mich 1, 24-25; 289 NW2d 1 (1980), the Court held that the trial court's instruction that "unless the testimony satisifies you of something else" was improper burden-shifting language. The Court stated as follows:

"The vice of the instructions is thoroughly explained in an oft-quoted opinion in *Mann v United States,* 319 F2d 404, 409 (CA 5, 1963):

" 'When the words, "So unless the contrary appears from the evidence" were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is expecially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results.'

"We are convinced that by instructing the jury that

'unless the testimony satisfies you of something else', the trial court created the prospect that the jury 'may have interpreted the judge's instruction as * * * a burden-shifting presumption', *Sandstrom [v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979)], *supra,* p 524, and the instruction is therefore unconstitutional."

In *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980), the Court held that the trial court's instruction that "the intention to kill in the absence of evidence showing a contrary intent may be inferred by *[sic]* the use of a deadly weapon in such a manner that death * * * would be an inevitable consequence" was also an impermissible burden-shifting instruction. Relying on *Wright* and *Richardson,* defendant claims that the trial court's instructions that "these facts, if not explained" erroneously shifted the burden of proof.

Jury instructions must be read as a whole, not extracted piecemeal from the transcript and assailed as reversible error. *People v Choate,* 88 Mich App 40, 45; 276 NW2d 862 (1979). In the case at bar, the jury was instructed that although it *could* infer from the circumstances that defendant knew the property was stolen, it was also specifically instructed that it need not make that inference; *i.e.,* that the inference was merely a permissible one not rising to the level of a presumption.

The transformation of a permissible inference into a burden-shifting presumption by means of a jury instruction is the vice which *Wright* and *Richardson* sought to prevent. The above-noted sentence from the instruction in this case is what distinguishes this case from *Richardson* and *Wright;* they were cases in which the jurors were instructed that, if they found certain circumstances existed, they were obliged, in essence, as a

matter of law, to conclude that defendant had the requisite intent to commit the crimes charged, unless there was evidence to the contrary. Since the jury was not instructed in such a manner in this case, we find no reversible error here.

Defendant further urges reversal of his conviction because the trial court refused, upon request therefor, to instruct the jury that it must acquit defendant of the charge of which he was convicted if it found that defendant had participated in the larceny.

In *People v Kyllonen,* 402 Mich 135; 262 NW2d 2 (1978), the Supreme Court held that a defendant could not be convicted of receiving and concealing property that he stole. The merit of defendant's claim turns upon whether or not he could have been convicted of the larceny from the Michigan Liquor Control Commission's Saginaw liquor store. The facts of this case clearly establish that defendant was not one of the principals in the actual theft, although he did enter the liquor store and purchase a bottle of wine contemporaneously with the theft of two cases of liquor from the rear of the store, and rode to and from the store in the same car as that in which the principals in the larceny offense rode. The question, then, is whether defendant could have been convicted of aiding and abetting the larceny.

Even simple larceny, as defined in MCL 750.356; MSA 28.588, and the cases interpreting the statute, requires a specific intent to deprive the owner of his property permanently. LaFave & Scott, Criminal Law, § 28, p 196. Also see *Kyllonen, supra,* 148, fn 14, *People v Goodchild,* 68 Mich App 226, 232; 242 NW2d 465 (1976), *lv den* 397 Mich 830 (1976). Since simple larceny is a specific intent crime, in order to convict the defendant of aiding

and abetting a larceny, a particular mental state of the defendant must be established, which must concur with the *actus reus* of that crime. In *People v Rigsby,* 92 Mich App 95, 97-98; 284 NW2d 499 (1979), *lv den* 408 Mich 879 (1980), this Court held that:

"The aider and abettor of a specific intent crime, if not himself possessed of the requisite specific intent, must be shown to have rendered his aid and assistance to the principal actor with the knowledge that the principal himself possessed the intent necessary to be guilty of the crime. *People v Gordon,* 60 Mich App 412; 231 NW2d 409 (1975), *lv den* 397 Mich 884 (1976), *People v Poplar,* 20 Mich App 132; 173 NW2d 732 (1969)."

Under this test, it is manifest to this Court that defendant could have been convicted as an aider and abettor. By his own admission, he knew before the fact "what was going down". He entered the liquor store and purchased a bottle of wine at the time that the larceny was being perpetrated, from which it reasonably could be inferred that defendant intended to distract a sales clerk in order to aid the principals, with knowledge of the prinipals' intent to commit the larceny, if not possessed of the specific intent required for conviction of that crime. He rode in the vehicle in which the goods were transported, with knowledge of their character, and without protest.

In such a case, the Supreme Court in *Kyllonen* made it clear that a defendant cannot be convicted of receiving and concealing property which he had stolen. After an exhaustive historical analysis of the statute under which the defendant herein was convicted, the Court concluded:

"Therefore, the statute should be strictly construed to exclude thieves who conceal property they have stolen. Under the Michigan statutory scheme, thieves are to be punished for larceny. Persons who help thieves or others conceal stolen property are to be punished for aiding in the concealment of stolen property." (Footnote omitted.) *Kyllonen, supra,* 148.

In *Kyllonen,* the prosecution contended that the Court's decision required proof beyond a reasonable doubt that the defendant was not the thief in order to secure a conviction for receiving and concealing stolen property. In response, the Court stated:

"This problem will vanish if the prosecution charges the defendant with both larceny and buying, receiving or aiding in the concealment of stolen property. The prosecution then may simply present its proofs and the factfinder may convict the defendant of either crime or acquit him altogether, depending upon its perception of the evidence." (Footnote omitted.) *Kyllonen, supra,* 150.

The Court in *Kyllonen* also rejected the prosecution's argument that the receiving and concealing stolen property convictions of the defendants therein should be affirmed because the jurors were free to believe the evidence produced that tended to show that the defendants concealed the stolen property and to disbelieve the evidence that tended to show that the defendants therein were the thieves.

In answer to this claim, the Court remarked:

"This argument would be acceptable if the jurors had been instructed that they must acquit the defendant of buying, receiving or aiding in the concealment of stolen property if they believed that the defendant was the thief. Because the jurors were not informed of this

crucial legal fact, they may have rendered verdicts of guilty even though they believed that the defendant in each case was the actual thief. Therefore, the prosecution's argument must be rejected and the defendants' convictions must be reversed." *Kyllonen, supra,* 151.

This is the precise instruction that was requested and not given in the case at bar. Under *Kyllonen,* defendant's conviction must be reversed.

Finally, the question of whether defendant may be retried is not ripe for decision, as was the case in *Kyllonen.* As noted by the Court in *Kyllonen, supra,* 151:

"The defense argues that the 'same transaction' test adopted by this Court in *People v White,* supra,[2] bars reprosecution of the defendants and mandates their discharge. We decline to consider this argument at this time because it is premature. Unless and until the prosecutors in these two cases decide to reinstitute proceedings against these defendants, the question whether *White* bars reprosecution does not arise, except in the abstract. We prefer to wait for a concrete case in which this question is squarely presented before making a decision."

Likewise, we defer decision on this question until a concrete factual situation is presented to us. We do not retain jurisdiction with respect to this issue.

Finally, we address defendant's claim of reversible error in the prosecution's failure to endorse and produce Nathaniel Beasley as a res gestae witness. The trial court ruled that Beasley was not a res gestae witness, after conducting a *Robinson*[3] hearing upon order from this Court, in accordance with the order of inquiry established in *People v*

---

[2] 390 Mich 245; 212 NW2d 222 (1973).

[3] *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973).

*Pearson,* 404 Mich 698, 723; 273 NW2d 856 (1979). Defendant claims that the ruling of the trial court was clearly erroneous. Although we have already reversed defendant's conviction, this issue would become relevant should the prosecution seek to retry defendant, at the very least if defendant is charged with both larceny and receiving and concealing stolen property.

In the instant case, the *Robinson* hearing was held on September 29, 1980. In his opening statement, the prosecutor argued that the fact that Mr. Beasley was present at the scene of the search and seizure did not make him a res gestae witness. Defense counsel argued that, since defendant was not charged with larceny but with receiving and concealing stolen property, Mr. Beasley's presence at the home in which defendant allegedly possessed and concealed the property made him a res gestae witness to part of the continuing criminal transaction.

At the *Robinson* hearing, Mr. Beasley testified that, on July 18, 1979, he had forgotten the key to his sister's home on Wadsworth, so he went across the street to use Nita Baldwin's telephone to call his sister at approximately 12:40 p.m. He further testified that: (1) defendant answered the door for him; (2) there were other men present; (3) he neither saw any liquor nor heard any talk of liquor; and (4) while he was in the living room, a police officer entered the house with his gun drawn and without permission.

Under the definition of res gestae witness found in *People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976),[4] there is no doubt that Mr. Beasley was a res gestae witness with respect to

---

[4] Also see *People v Abdo,* 81 Mich App 635, 643; 265 NW2d 779 (1978), *lv den* 405 Mich 805 (1979).

the crime of receiving and concealing stolen property. Conversely, it is equally clear that Beasley was not a res gestae witness with respect to the crime of larceny. Therefore, depending upon the crime or crimes against which defendant will be required to defend on retrial, the prosecution shall be required to endorse and produce the witness. Only if defendant is tried solely on a charge of larceny will the prosecution be excused from endorsing and producing Mr. Beasley.

Defendant's conviction is reversed and the cause is remanded to afford the prosecution the opportunity to reinstitute proceedings against defendant.