[No. H002998. Sixth Dist. June 7, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM REYNOLDS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*This opinion is certified for partial publication (rule 976.1, Cal. Rules of Court). Parts II, III and IV are not included in the order of publication.

**COUNSEL**

Cameron M. Cunningham, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Joyce E. Hee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COTTLE, J.**—Defendant William Reynolds was charged by amended information with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and with false imprisonment (Pen. Code, §§ 236, 237). It was alleged he personally used a knife (Pen. Code, §§ 667, 1192.7) and inflicted great bodily injury to the victim (Pen. Code, § 12022.7) in the commission of these offenses. Reynolds was also charged with four out-of-state prior serious felony convictions within the meaning of Penal Code sections 667 and 1192.7.

After his motion to suppress evidence (Pen. Code, § 1538.5) was denied in part, Reynolds proceeded to trial. A jury found Reynolds guilty of both counts and found true the personal use allegation. It found untrue the great bodily injury allegation.

A separate jury trial was held on the prior conviction enhancement allegations. The trial court struck one of the four allegations. The other three prior serious felony convictions were found to be true. Reynolds was sentenced to 19 years in state prison.

## I

## FACTS

On July 17, 1986, at approximately 5:30 p.m. Shauna Lee, a San Jose City College student, was walking through the parking lot of Repo Depo and Kirkwood Printing en route to an evening class when she noticed a van in the lot with its rear doors facing her. She saw Reynolds get out of the driver's side, lean inside the empty van, and then start to walk towards her. She started to run, but Reynolds ran up, grabbed her by her upper arm, jerked her around, and pointed a knife with a curved blade at her.

Reynolds dragged Lee to the van as she screamed to attract attention. Reynolds shoved Lee into the van, climbed in, and closed the doors as Lee continued to struggle and scream. Reynolds told her to "shut up" and began choking her neck. When she managed to scratch his face, Reynolds

released his left hand and tore her gold rimmed glasses off her face and threw them in the back of the van. Lee managed to sit up and scream, "rape" and "murder."

Reynolds grabbed the back of Lee's hair and pounded her head on the metal floor and circular tire bump of the van several times. He suddenly stopped hitting Lee's head against the van floor as Lee heard the sound of a car horn. He opened the sliding door and pushed her out head first onto the pavement.

At approximately 5:35 p.m., Jeffrey Rodgers and Jelena Kralj were leaving Kirkwood Printing when Kralj heard muffled screams. She drove to the side of the building to investigate and saw a white van with a blue horizontal stripe, heard screams inside the van, and saw Reynolds look out its back window. She alerted Rodgers who followed Kralj to the van where they both yelled and honked their car horns. Rodgers heard a woman's screams as well as knocking and pounding noises coming from the van. Both Rodgers and Kralj saw the side doors of the van fly open and saw Reynolds throw Lee head first onto the pavement.

Rodgers saw Reynolds look out of the van at him, rush outside, slam the side doors, and then drive off. Rodgers followed the van a short distance to Harmon Street, where it parked in front of an apartment building; Rodgers then drove back to Kirkwood Printing.

About 15 minutes later, Rodgers led San Jose Police Officer Tozer to the parked van on Harmon. Police and sheriff deputies questioned people at the apartment complex until they ascertained that a man who fit the suspect's description was in apartment 15 of 959 Harmon.

Tozer and Officer Johnson knocked and announced their presence at the door to the apartment. Reynolds's fiancee, Lisa Castor, opened the door, refused to let the officers enter without a warrant, and tried to slam the door in their faces. Johnson pushed open the door and detained Castor while Tozer looked for the suspect and the knife described by Lee.

Tozer saw a knife with a curved blade lying on a living room table and another knife on top of a bedroom table. He also saw a brown paper garbage bag in the kitchen with a bloody rag in it and the gold rims of what appeared to be a pair of glasses. The officers searched the bedroom and found Reynolds hiding under the bed.

Reynolds testified on his own behalf that he had been driving a van which had been loaned to him by his employer when he noticed Lee hitchhiking.

Reynolds picked her up and she directed him to the Repo Depo lot where she turned to him and said, "How about letting me make some money." He told her he did not have any money and asked her to get out of the van. She asked for money for sex and threatened to scream rape; he told her all he had was 10 dollars and demanded she get out. He told her he had a girlfriend. Eventually he put his head down on the steering wheel, hoping she would leave if he didn't say anything, but Lee jumped at him, scratching, biting, and screaming "rape." While struggling to get out of his seat belt, Reynolds, by "normal instinct" warded off Lee's attack by striking her near her right eye.

Able to undo his seat belt, Reynolds lunged at Lee; they both fell into the back part of the van. As Lee bit him Reynolds grabbed her by the hair and jerked her head back as far as he could. He tried to get the side doors open but was prevented from doing so because Lee was scratching and punching him. Finally able to open the doors, he threw Lee out. When the doors were open, Reynolds saw a man standing near his car and saw another car facing the van. He drove off because he did not think anyone would believe what had happened. He returned to his apartment, parked the van, and, because his fiancee was very jealous, he told her that he had picked up a male hitchhiker who had pulled a knife and that they had gotten into a fight.

Reynolds used his T-shirt to wipe off blood from his injuries and threw it in the garbage. He helped Castor clean up the van and then returned to the apartment. He testified that Castor wiped up blood from the floor of the van and found a pair of glasses inside the van.

Reynolds spotted two deputy sheriffs downstairs and went into the bedroom. He listened to Castor answer the officer's knock and heard the commotion as they entered the apartment. He was standing up next to the closet when the police entered the bedroom, not hiding under the bed.

II-IV*

. . . . . . . . . . . . . . . . . . . .

V

OUT-OF-STATE PRIOR CONVICTIONS

■ Reynolds claims the trial court erred in imposing five-year enhancements for his out-of-state prior convictions as they did not include all of the elements of the corresponding California statutes.

---

*See footnote, *ante*, page 382.

On February 11, 1987, the trial court found as a matter of law that three of Reynolds's out-of-state prior convictions were "serious felonies" within the meaning of Penal Code sections 667 and 1192.7. Defense counsel asked whether, in so ruling, the court had limited itself to reviewing the sentencing records and record of conviction pursuant to the holding in *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154]. In response, the trial court stated that it had relied solely upon the relevant state statutes and upon the record of conviction in each case, that it had "not considered the informations in arriving at [its] decision."

In *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150], the California Supreme Court expressly overruled *Alfaro* and held that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction." In that case, the Supreme Court determined the trial court had acted properly when it reviewed an accusatory pleading charging a residential burglary and the defendant's plea of guilty or nolo contendere in determining whether two serious felony convictions were true.

With regard to the prior Michigan conviction, in 1978 Reynolds pleaded guilty to violating section 750.110 of the Michigan Compiled Laws (breaking and entering an occupied dwelling house). That section, provides, in pertinent part, as follows: "Any person who breaks and enters any occupied dwelling house, with intent to commit any felony or larceny therein, shall be guilty of a felony punishable by imprisonment in the state prison for not more than 15 years. For the purpose of this section 'any occupied dwelling house' includes one that does not require the physical presence of an occupant at the time of the breaking and entering but one which is habitually used as a place of abode."

In 1986 Penal Code section 459 provided in relevant part as follows: "Every person who enters any house, room, apartment, tenement . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not." A burglary of an inhabited dwelling house constituted first degree burglary (Pen. Code, § 460). In order to prove the crime of burglary of an inhabited dwelling house where the target crime is theft, the prosecution was required to prove that a person entered an inhabited dwelling house, and that at the time of that entry, "such person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of such property." (CALJIC No. 14.50.)

The Michigan and California statutes proscribing burglary of a residence are identical in all essential respects. Reynolds's sole contention is that the

Michigan offense did not include all the elements of the California serious felony of "burglary of a residence" because the requisite intent element for larceny under Michigan and California laws are not the same. He claims that larceny as defined by Michigan law does not have the same intent element required by California law, i.e., the specific intent to permanently deprive the victim of property. This contention has no merit.

Larceny and larceny by stealing in any dwelling house are proscribed by Michigan Compiled Laws sections 750.356 and 750.360, respectively.

Section 750.356 provides, in pertinent part: "Any person who shall commit the offense of larceny, by stealing, of the property of another . . . if the property stolen exceed the value of $100.00, shall be guilty of a felony . . . ."

Section 750.360 of the Michigan Compiled Laws provides: "Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony."

It is well established that an essential element of larceny under Michigan law is the felonious intent to deprive the owner permanently of his property. (See *People* v. *Kyllonen* (1978) 402 Mich. 135 [262 N.W.2d 2, 7, fn. 14]; *People* v. *Wilbert* (1981) 105 Mich.App. 631 [307 N.W.2d 388, 392]; *People* v. *Goodchild* (1976) 68 Mich.App. 226 [242 N.W.2d 465, 468].)

Reynolds's prior conviction in Michigan for breaking and entering an occupied dwelling house includes all the elements of the California serious felony of burglary of a residence. The trial court did not err in so ruling.

On the other hand, the People correctly concede that the bare records of conviction for two of the three out-of-state convictions, the Oregon conviction for "burglary in the first degree (Class A Felony)" and the Oregon conviction for robbery in the third degree do not necessarily support the Penal Code section 667 enhancement.[1] They acknowledge that only by

___

[1] Oregon Revised Statute section 164.225 defines first degree burglary as follows: "(1) A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate

reference to the information or indictment in each Oregon case can they attempt to establish the requisite proof that the prior conviction was a "serious felony" for the purpose of the five-year enhancement under Penal Code sections 667 and 1192.7, subdivision (c).

The People then argue that in each Oregon conviction, the information or indictment was incorporated in the judgment such that, on appeal, we can consider the accusatory pleading in determining whether the necessary elements of a serious felony have been established. In so arguing, the People rely upon *People* v. *Longinetti* (1985) 164 Cal.App.3d 704 [210 Cal.Rptr. 729].[2] In *Longinetti* the prior judgment of conviction recited as follows: " '. . . Whereas the said defendant having duly pleaded guilty in this court of the crime of burglary, of the second degree, In Violation of Section 459, Penal Code, a Felony, *as Charged in the Information,* It is Therefore Ordered, Adjudged and Decreed that said defendant be punished . . . .' " (*Id.,* at p. 706, italics in original.) Based upon this language in the judgment of conviction, the court held that "[b]y specific reference thereto the information is incorporated in the prior judgment. The judgment thus clearly,

flight therefrom the person: [¶] (a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or [¶] (b) Causes or attempts to cause physical injury to any person; or [¶] (c) Uses or threatens to use a dangerous weapon. [¶] (2) Burglary in the first degree is a Class A felony."

Oregon Revised Statute section 164.215 provides: "(1) A person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

In Oregon, a person may therefore be convicted of first degree burglary if he enters or remains in a dwelling with intent to commit any crime therein, be it felony or misdemeanor. To the contrary, in California, the person must have the intent to commit grand or petit larceny or any felony. (Pen. Code, §§ 459, 460.) Because an Oregon conviction for first degree burglary could be based on an act not constituting burglary in California, it would not necessarily support the section 667 enhancement. (See *In re Finley* (1968) 68 Cal.2d 389, 391-392 [66 Cal.Rptr. 733, 438 P.2d 381].)

Similarly, Oregon Revised Statute section 164.395 provides: "(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft the person uses or threatens the immediate use of physical force upon another person with the intent of: [¶] (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or [¶] (b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft. [¶] (2) Robbery in the third degree is a Class C felony."

Oregon law does not require an actual taking of property but only the intent to commit theft (*State* v. *Skaggs* (1979) 42 Ore.App. 763 [601 P.2d 862]), while robbery under Penal Code section 211 requires that property of some value be taken from a person or from his immediate possession (Pen. Code, § 211; former CALJIC No. 9.10). Because an Oregon conviction for robbery in the third degree could be based on an act not constituting robbery in California, it would not necessarily support the section 667 enhancement. (*In re Finley, supra,* 68 Cal.2d 389.)

[2] *People* v. *Longinetti* was disapproved in *People* v. *Alfaro, supra*, 42 Cal.3d at page 636, fn. 8. However, *People* v. *Guerrero, supra,* 44 Cal.3d at p. 356, expressly overruled the *Alfaro* decision.

specifically, and unambiguously incorporates the specific elemental fact which it finds." (*Ibid.*) In *People* v. *Colbert* (1988) 198 Cal.App.3d 924, 930 [244 Cal.Rptr. 98], the court recently applied the *Guerrero* rule to find that the trial court properly examined the information alleging a residential burglary and the "abstract of judgment and minute order reflecting that the jury had found appellant guilty 'as charged in the information.'"

However, neither *Longinetti* nor *Colbert* can be applied to the Oregon prior convictions before this court. In both Oregon cases, the only reference is to a conviction for an "included offense of the crime charged in the" information or indictment. Clearly, such a reference in the record of conviction cannot unambiguously incorporate any specific elemental fact enunciated in the information or indictment.

Given that the trial court felt constrained under *Alfaro* to limit its consideration to the record of conviction, it is unclear on this record whether the People could have produced the change of plea form, the colloquy at the time the plea was taken or other admissible evidence which would have supported the court's findings that the Oregon priors were "serious felonies" for enhancement purposes. In light of the retroactive effect of *Guerrero* (*People* v. *Batista* (1988) 201 Cal.App.3d 1288, 1294 [248 Cal.Rptr. 46]), we remand to the trial court to permit the prosecution to produce the entire records of the Oregon convictions to the trier of fact on the issue of the sufficiency of the evidence to support the serious felony enhancements based upon the two prior Oregon convictions.

■ Reynolds contends that double jeopardy bars a subsequent trial on the prior conviction allegations. We conclude that the double jeopardy clause does not prevent the state from seeking to re-prove that the Oregon prior convictions were "serious felonies" within the meaning of Penal Code sections 667 and 1192.7; "a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as the 'incorrect receipt or rejection of evidence.'" (*Lockhart* v. *Nelson* (1988) 488 U.S. 33, 40 [102 L.Ed.2d 265, 273, 109 S.Ct. 285], citing *Burks* v. *United States* (1978) 437 U.S. 1, 14-16 [57 L.Ed.2d 1, 11-13, 98 S.Ct. 2141].) Here, the trial court rejected admissible evidence under the erroneous *Alfaro* rule. There is a difference between failing "to muster" evidence (*Burks, supra,* at p. 11) and being procedurally barred from producing that evidence.

Accordingly, this case is remanded to the trial court for the limited purpose of reevaluating whether either or both of the Oregon prior convictions are "serious felonies" within the meaning of Penal Code sections 667 and 1192.7 in light of *People* v. *Guerrero, supra,* 44 Cal.3d 343, and in

accordance with the views expressed in this opinion. Should the trial court determine that either or both of these out-of-state prior convictions do not constitute a "serious felony" it should strike the corresponding five-year enhancement. In all other respects, the judgment is affirmed.

Agliano, P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 24, 1989.