STAMPS v CITY OF TAYLOR

Docket No. 180006. Submitted July 17, 1996, at Detroit. Decided September 6, 1996, at 9:20 A.M. Leave to appeal sought.

Clarence Stamps, Jr., brought an action in the Wayne Circuit Court against the City of Taylor and three of its police officers, seeking damages for injuries allegedly sustained when the plaintiff was arrested. The court, James R. Chylinski, J., granted summary disposition for the defendants, finding the action barred because of a release that the plaintiff signed that discharged the defendants from all civil liability arising out of his arrest in exchange for the dismissal of criminal charges against the plaintiff that were brought following his arrest. The plaintiff appealed.

The Court of Appeals *held*:

1. Release-dismissal agreements are not invalid per se, but must be scrutinized rigorously in accordance with the standards set forth in *Town of Newton v Rumery*, 480 US 386 (1987). Before a court properly may conclude that a particular release-dismissal agreement is enforceable, it must specifically determine that it was voluntary, there was no prosecutorial misconduct, and enforcement of the agreement will not adversely affect relevant public interests. The burden of proving each of these points falls upon the party who seeks to invoke the agreement.

2. In assessing the voluntariness of an agreement, the court should consider the sophistication of the criminal defendant, whether the signer of the release was in custody at the time of signing, was represented by counsel, had ample time to consider the agreement before signing it, or expressed any unwillingness, and whether the release is clear on its face.

3. In addressing the issue of prosecutorial overreaching or misconduct, the party seeking enforcement must show that the prosecutor's pursuit of the agreement arose from a case-specific concern for the public interest, rather than a concern for the private interests of governmental officials.

4. Release-dismissal agreements should be scrutinized closely in cases where substantial evidence supports an allegation of police misconduct. Where a court concludes that a prosecutor procured a release-dismissal agreement in the face of substantial evidence of

police misconduct, the court may take this as evidence of prosecutorial misconduct.

5. The part of the trial court's order upholding the release-dismissal agreement must be reversed and the matter must be remanded to allow the trial court to analyze the relevant factors established by *Rumery*.

6. The trial court erred in ruling that the defendant city is immune from liability with regard to the plaintiff's constitutional claims. The matter must be remanded for a determination whether the plaintiff sufficiently pleaded and factually supported his claim that the city violated the Michigan Constitution by virtue of a specific custom or policy.

7. Summary disposition was properly granted for the city with regard to the nonconstitutional claims brought by the plaintiff.

8. Summary disposition was properly granted with regard to defendant J. R. Beaver because the plaintiff failed to raise an issue of material fact to support his allegations against Beaver.

Affirmed in part, reversed in part, and remanded.

1 CONTRACTS — RELEASE OF LIABILITY — CRIMINAL LAW — DISMISSAL OF CHARGES — PROSECUTORIAL MISCONDUCT.

A release that relinquishes a criminal defendant's right to file a civil action in exchange for the dismissal of criminal charges against the defendant is not invalid per se, and such releases should be analyzed case by case; to be enforceable, the agreement must be voluntary, there must be no evidence of prosecutorial misconduct, and it must be shown that enforcement will not adversely affect relevant public interests; the burden of proving each of these points falls upon the party who seeks to invoke the agreement; the party seeking enforcement, in addressing the issue of prosecutorial overreaching or misconduct, must show that the prosecutor's pursuit of the agreement arose from a case-specific concern for the public interest, rather than a concern for the private interests of governmental officials; a court that concludes that a release was secured in the face of substantial evidence of police misconduct should consider such evidence as evidence of prosecutorial misconduct.

2. CONTRACTS — RELEASE OF LIABILITY — CRIMINAL LAW — DISMISSAL OF CHARGES — VOLUNTARINESS.

The factors that a trial court should consider in determining the voluntariness of a release that relinquishes a criminal defendant's right to file a civil action in exchange for the dismissal of criminal charges against the defendant are the sophistication of the criminal defendant, whether the defendant was in custody at the time of the signing, was represented by counsel, was given ample time to con-

sider the agreement before signing, or expressed any unwillingness, and whether the release is clear on its face.

3. CONTRACTS — RELEASE OF LIABILITY — CRIMINAL LAW — DISMISSAL OF CHARGES — CLAIMS OF POLICE BRUTALITY — PUBLIC POLICY.

Strong public policy reasons mitigate against the enforcement of a release that relinquishes a criminal defendant's right to file a civil action in exchange for the dismissal of criminal charges against the defendant where the released claims involve meritorious claims of police brutality.

4. GOVERNMENTAL IMMUNITY — CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS.

Governmental immunity is not available where a plaintiff alleges that a governmental agency, including state offices and municipalities, violated a right conferred by the state constitution.

*Alexander M. Kelin, P.C.* (by *Alexander M. Kelin*), for the plaintiff.

*John H. Dise, Jr.,* and *Gina U. Puzzuoli,* for the defendants.

Before: HOOD, P.J., and GRIFFIN and J. F. FOLEY,* JJ.

GRIFFIN, J. Plaintiff appeals as of right an order granting summary disposition for defendants pursuant to MCR 2.116(C)(7) and (10). The principal issue on appeal is whether a release that relinquishes a criminal defendant's right to file a civil action in exchange for the dismissal of criminal charges is enforceable. We hold that release-dismissal agreements are not invalid per se, but that such agreements must be rigorously scrutinized in accordance with the standards set forth in *Town of Newton v Rumery,* 480 US 386; 107 S Ct 1187; 94 L Ed 2d 405 (1987). Accordingly, we reverse in part and remand for reconsideration in light of *Rumery.*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

After responding to plaintiff's girlfriend's request for assistance, defendant Officers Timothy Culp and Rory Johnson attempted to encourage the intoxicated plaintiff to leave his girlfriend's home. When plaintiff finally walked outside the home, he was arrested after a loud and profane protest. Plaintiff alleges that as he was being forced into a police vehicle, one of the officers struck plaintiff's lower thigh, causing plaintiff's knee to fracture.

Following his arrest and alleged injury, plaintiff was charged with trespassing. The criminal charge was dismissed, however, after plaintiff agreed to sign a release discharging the city and its employees from all civil liability arising out of his arrest. Notwithstanding the executed release, plaintiff filed suit against defendants, alleging that he sustained damages caused by excessive force inflicted by Officers Culp, Johnson, and J. R. Beaver. Additionally, plaintiff alleged that defendant city negligently hired and trained defendant officers, that the officers deprived plaintiff of liberty without due process of law, and that the city practiced a "custom or policy" that caused a violation of plaintiff's state and federal constitutional rights. The trial court granted summary disposition for all defendants with regard to all claims.[1]

II

On appeal, plaintiff first argues that an agreement releasing a municipality and its employees from civil

---

[1] Although defendants removed this case to federal court, plaintiff's state claims were remanded to the trial court. On December 21, 1993, a stipulation and order was entered dismissing all plaintiff's federal claims.

liability in exchange for the dismissal of criminal charges violates public policy and is unenforceable per se. In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(7), we accept plaintiff's well-pleaded allegations as true, *Shawl v Dhital*, 209 Mich App 321, 323; 529 NW2d 661 (1995); *Simmons v Apex Drug Stores, Inc*, 201 Mich App 250, 252; 506 NW2d 562 (1993), and examine any pleadings, affidavits, depositions, admissions, and documentary evidence submitted by the parties in a light most favorable to the nonmovant. MCR 2.116(G)(5); *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 617; 513 NW2d 428 (1994). If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the trial court must enter judgment without delay. MCR 2.116(I)(1); *Skotak, supra* at 617; *Nationwide Mutual Ins Co v Quality Builders, Inc*, 192 Mich App 643, 647-648; 482 NW2d 474 (1992).

In *Gray v Galesburg*, 71 Mich App 161; 247 NW2d 338 (1976), this Court adopted a rule invalidating release-dismissal agreements per se. In support of its holding, the *Gray* panel first concluded that such agreements effectively "bargain away the people's right to see criminal offenders prosecuted, in return for an agreement to hold harmless private individuals which, at best, is of indirect public value and, at worst, directly contravenes the public interest." *Id.* at 164. Second, this Court determined that "[t]he extraction of such a release while the defendant is in custody presents too great an opportunity for officials to employ coercion." *Id.* at 165. Finally, the *Gray* panel reasoned that "a desire on the part of the prosecuting authority to extract police officers from possible lia-

bility offers an undeniable temptation to concoct or exaggerate the charges against the defendant to enhance his bargaining position." *Id.*; see also *Boyd v Adams*, 513 F2d 83, 88-89 (CA 7, 1975); *Dixon v Dist of Columbia*, 129 US App DC 341, 343-344; 394 F2d 966 (1968).

Subsequently, in *Rumery*, *supra*, the United States Supreme Court refused to invalidate all release-dismissal agreements simply because some agreements may encroach public policy. Noting that criminal defendants are often faced with "difficult choices that effectively waive constitutional rights" and that there exists "no reason to believe that release-dismissal agreements pose a more coercive choice than other situations" where defendants waive constitutional rights, the lead opinion in *Rumery* rejected the proposition that release-dismissal agreements are inherently coercive. *Id.* at 393. Writing for the Court,[2] Justice Powell recognized that some release-dismissal agreements "will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id.* at 394. In her concurring opinion, Justice O'Connor agreed that release-dismissal agreements can further public interests by protecting government employees from the expensive, time-consuming task of defending against meritless civil claims. *Id.* at 399-400 (O'Connor, J., concurring in part), see *id.* at 395-396. Consequently, a majority of the justices rejected a rule invalidating such agreements per se and agreed that release-dismissal agree-

---

[2] Justice O'Connor joined in parts I, II, III-A, IV, and V of Justice Powell's opinion, thereby making these sections the opinion of the Court.

ments should be analyzed case by case.[3] *Id.* at 392-
393; *id.* at 399 (O'Connor, J., concurring in part).

In evaluating the release in *Rumery*, Justices Pow-
ell and O'Connor each analyzed several "important
interests" that should be balanced in determining its
enforceability. *Id.* at 392, 395; *id.* at 399 (O'Connor, J.,
concurring in part). Reading the *Rumery* lead and
concurring opinions together, the Court of Appeals
for the Sixth Circuit in *Coughlen v Coots*, 5 F3d 970,
974 (CA 6, 1993), summarized the *Rumery* holding as
follows:

> [T]he *Rumery* opinion instructs us that before a court
> properly may conclude that a particular release-dismissal
> agreement is enforceable, it must specifically determine
> that (1) the agreement was voluntary; (2) there was no evi-
> dence of prosecutorial misconduct; and (3) enforcement of
> the agreement will not adversely affect relevant public
> interests. The burden of proving each of these points falls
> upon the party . . . who seeks to invoke the agreement.

See *Rumery, supra* at 397-398; *id.* at 399, 401
(O'Connor, J., concurring in part); see also *Hill v
Cleveland*, 12 F3d 575, 578 (CA 6, 1993); *Cain v
Darby Borough*, 7 F3d 377, 380 (CA 3, 1993); *Woods v
Rhodes*, 994 F2d 494, 499 (CA 8, 1993); *Berry v Peter-
son*, 887 F2d 635, 637 (CA 5, 1989); *Lynch v Alham-
bra*, 880 F2d 1122, 1126 (CA 9, 1989).

A

In assessing the voluntariness of a particular
release-dismissal agreement, the trial court should

---

[3] Even Justice Stevens, writing for the four dissenters, stated: "Because
this is the first case of this kind that the Court has reviewed, I am hesitant
to adopt an absolute rule invalidating all such agreements." *Rumery,
supra* at 417 (Stevens, J., dissenting).

consider (1) the sophistication of the criminal defend-
ant, (2) whether the signer of the release was in cus-
tody at the time of signing, (3) whether the signer
was represented by counsel, (4) whether the signer
had ample time to consider the agreement before
signing it, (5) whether the signer expressed any
unwillingness, and (6) whether the release is clear on
its face. See *Rumery, supra* at 394; *id.* at 401-402
(O'Connor, J., concurring in part); *Hill, supra* at 578;
*Livingstone v North Belle Vernon Borough*, 12 F3d
1205, 1210 (CA 3, 1993); *Woods, supra* at 499; *Berry,
supra* at 639-640; *Poling v Ferguson*, 878 F Supp 880,
882 (ND W Va, 1995).

B

Next, in addressing the issue of "prosecutorial over-
reaching" or misconduct, the party seeking enforce-
ment must show that the prosecutor's pursuit of a
release-dismissal agreement arose from a case-
specific concern for the public interest, rather than a
concern for the private interests of governmental offi-
cials. See *Rumery, supra* at 395, 398; *Livingstone,
supra* at 1215; *Cain, supra* at 381; *Woods, supra* at
500; see, generally, *Hammond v Bales*, 843 F2d 1320,
1322 (CA 10, 1988). With regard to this issue, we
agree with and adopt the following principles articu-
lated by the Court of Appeals for the Sixth Circuit in
*Coughlen, supra* at 974:

> [T]hese agreements should be scrutinized closely in cases
> where substantial evidence supports an allegation of police
> misconduct, in view of the potential for abuse of release-
> dismissal agreements by law enforcement officials.
> [*Rumery*] at 394-95, 107 S Ct at 1192-93 (plurality opinion);
> *id.* at 400, 107 S Ct at 1196 (O'Connor, J., concurring in part
> and in the judgment). Examples of such prosecutorial mis-

conduct would include situations where, following their use of excessive force, police officers file unfounded criminal charges as bargaining chips to cover up their own conduct or to induce the victim to give up his cause of action; or where a prosecutor, upon discovering that the victim has a meritorious civil claim, files frivolous criminal charges in order to protect the police officers. Accordingly, should a court conclude that a prosecutor secured a release-dismissal bargain in the face of substantial evidence of police misconduct, the court could take this as evidence of prosecutorial misconduct, since it would demonstrate that "the coercive power of criminal process" was being "twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole." *Id.* at 400, 107 S Ct at 1196 (O'Connor, J., concurring in part and in the judgment).

C

Finally, in regard to the public interest, we caution that release-dismissals that arise from the public policy violations identified in *Gray* should not be enforced. Nonetheless, the mere potential for such harm should not invalidate those agreements that do not involve such policy transgressions. In our view, the flexible *Rumery* approach protects against the potential misconduct discussed in *Gray* while allowing for situations where release-dismissal agreements advance the public interest. In other words, *Rumery* appropriately rejects speculative risks or pessimistic assumptions regarding prosecutorial overreaching or misconduct that would otherwise nullify the legitimate exercise of prosecutorial discretion. See *Rumery, supra* at 395-397. Adopting the *Rumery* standards also avoids the inconsistency that would result if actions brought under the Michigan Constitu-

tion were evaluated by a test different from claims brought under 42 USC 1983. See *Rumery, supra* at 392. For these reasons, we hereby adopt and follow *Town of Newton v Rumery* and reject the rule invalidating release-dismissal agreements per se of *Gray v Galesburg.*

D

In the present case, the trial court did not analyze the relevant factors established by *Rumery.* Instead, the trial court upheld the release simply because it was applicable and unambiguous. Accordingly, we reverse and remand with instructions for the trial court to make the specific evaluations called for by this opinion. We emphasize that strong policy reasons mitigate against the enforcement of release-dismissal agreements where the released claims involve meritorious claims of police brutality. See *Rumery, supra* at 394-395; *id.* at 400 (O'Connor, J., concurring in part); *Coughlen, supra*; *Lynch, supra* at 1127; *Gray, supra*; see, generally, *Jones v Taber,* 648 F2d 1201 (CA 9, 1981); *Hylton v Phillips,* 270 Or 766; 529 P2d 906 (1974). Such agreements usually present an unreasonable risk of impairing the public interest by jeopardizing the integrity of the criminal justice process.

III

Plaintiff also claims that the trial court erred in ruling that defendant city is immune from liability with regard to plaintiff's constitutional claims. We agree. In *Smith v Dep't of Public Health,* 428 Mich 540, 544; 410 NW2d 749 (1987), our Supreme Court held that governmental immunity is unavailable where the plaintiff alleges that a governmental agency violated a right conferred by the state constitution. See also

*Marlin v Detroit,* 177 Mich App 108, 114; 441 NW2d 45 (1989); *Burdette v Michigan,* 166 Mich App 406; 421 NW2d 185 (1988). The holding in *Smith* is not limited to state offices, but applies to municipalities as well. See *Marlin, supra* at 114. Accordingly, pursuant to *Smith,* we remand for a determination whether plaintiff sufficiently pleaded and factually supported his claim that the city violated the Michigan Constitution by virtue of a specific custom or policy. However, because plaintiff does not contest the bar of immunity to nonconstitutional claims, summary disposition for defendant city is affirmed with regard to all other claims.

IV

Finally, plaintiff argues that summary disposition was improperly granted for defendant Beaver. According to plaintiff, there is a triable issue of fact whether Officer Beaver caused plaintiff's injury. We disagree. We review the trial court's ruling regarding a motion for summary disposition pursuant to MCR 2.116(C)(10) de novo to determine whether the pleadings or the uncontroverted documentary evidence establish that defendant is entitled to judgment as a matter of law. MCR 2.116(I)(1); *Kennedy v Auto Club of Michigan,* 215 Mich App 264, 266; 544 NW2d 750 (1996). The existence of either circumstance merits a grant of summary disposition. *Id.* at 266.

Here, defendants established by documentary evidence that Officer Beaver did not participate in plaintiff's arrest because Beaver was stationed at the jail at that time. Plaintiff offered no evidence to counter defendants' factual showing. Therefore, because plaintiff admitted at his deposition that he was not

maltreated at the police station, the trial court correctly ruled that plaintiff failed to raise a genuine issue of material fact to support his allegations against defendant Beaver. MCR 2.116(G)(4).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.