## BALCOM v ZAMBON

Docket No. 233069. Submitted October 1, 2002, at Grand Rapids. Decided December 20, 2002, at 9:20 A.M.

Gordon J. Balcom brought an action in the Kent Circuit Court against Richard E. Zambon and others, alleging legal malpractice. Zambon had served as the plaintiff's defense attorney when the plaintiff entered into a plea agreement with a prosecutor who orally stated on the record the terms of the agreement. One of the terms was that the victims of the plaintiff's crime were to release him from any civil liability upon his payment of restitution. The victims eventually filed a civil suit against the plaintiff in circuit court. The plaintiff moved for summary disposition, arguing that the suit was barred by the release outlined in the plea agreement. The court denied the motion, but no order to that effect was entered. After mediation, the suit was removed to the district court, where a jury returned a verdict and award of damages in favor of the victims. An appeal to the circuit court by the plaintiff was denied on the grounds that the denial of the plaintiff's motion for summary disposition was never memorialized by the entry of an order denying the motion and that the absence of such an order constituted abandonment of the issue. In his malpractice action, the plaintiff alleged that Zambon's malpractice consisted of failing to obtain a valid written release of civil liability and failing to have the circuit court enter an order denying his motion for summary disposition in the suit filed by the victims. The court, Dennis C. Kolenda, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. The circuit court erred in summarily dismissing the plaintiff's malpractice claim based on Zambon's failure to secure a written order denying the plaintiff's motion for summary disposition of the civil suit filed by the victims. In the victim's civil suit, the circuit court erred in concluding that releases of civil liability of the type involved in this case are invalid under MCL 750.149. Section 149 provides, in part: "Any person having knowledge of the commission of any offense punishable . . . by imprisonment in the state prison . . . who shall take any money, or any gratuity or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal such offense, or not to pros-

ecute therefor, or not to give evidence thereof, shall, when such offense of which he has personal knowledge was punishable with . . . imprisonment in the state prison for life, be guilty of a felony; and where the offense, of which he so had knowledge, was punishable in any other manner, he shall be guilty of a misdemeanor . . . ."
In order to sustain a charge of compounding a felony under § 149, the following must be established: the existence of an agreement to not prosecute or to conceal a crime, or to decline to provide evidence in a criminal prosecution; knowledge of the commission of a crime; and the receipt of some valuable consideration. Here, no violation of § 149 by the victims, the prosecutor, or Zambon can be established. Once the victims' civil suit was removed to the district court, the door to appellate review of the circuit court's ruling on the plaintiff's motion for summary disposition was effectively closed by the lack of a written order or judgment. Whether Zambon should have either anticipated the removal or taken steps to document the court's holding after removal occurred is a close enough question to render summary disposition inappropriate.

2. The circuit court did not err in summarily dismissing the plaintiff's malpractice claim based on Zambon's failure to secure a written plea agreement. The record in this case indicates that this claim is barred by the two-year period of limitation.

Affirmed in part, reversed in part, and remanded for further proceedings.

CRIMINAL LAW — COMPOUNDING FELONIES.

The following must be established to sustain a charge of compounding a felony: the existence of an agreement to not prosecute or to conceal a crime, or to decline to provide evidence in a criminal prosecution; knowledge of the commission of a crime; and receipt of some valuable consideration (MCL 750.149).

*Blaske & Blaske, P.C.* (by *E. Robert Blaske* and *Thomas H. Blaske*), for the plaintiff.

*Maddin, Hauser, Wartell, Roth, Heller & Pesses, P.C.* (by *Mark H. Fink*), for the defendants.

Before: FITZGERALD, P.J., and HOLBROOK, JR., and CAVANAGH, JJ.

PER CURIAM. In this legal malpractice case, plaintiff appeals as of right from an order of the circuit court granting defendants' motion for summary disposition

and dismissing with prejudice plaintiff's cause of action. We affirm in part, reverse in part, and remand for further proceedings.

The underlying facts of this case are not in dispute. On January 16, 1994, plaintiff went snowmobiling near Hesperia, Michigan, with his cousin, Jenna Yob Verhil, and her husband, Tom Verhil. After snowmobiling, the three went to the Comstock Bar. At some point during the evening, a fight erupted at the bar and involved plaintiff and the Verhils. Subsequently, for his involvement in the bar fight, plaintiff was charged with two counts of assault with intent to commit great bodily harm less than murder[1] and one count of assault and battery.[2] Plaintiff was represented in this criminal matter by defendant Richard E. Zambon. Eventually, a plea agreement was worked out between plaintiff and the prosecutor. Plaintiff agreed to plead no contest to a misdemeanor charge of disorderly conduct[3] and to provide restitution to the victims, in exchange for dismissal of the assault charges and the victims' agreement to forego a civil suit. In the record the only expression of the terms of the agreement was made by the prosecutor at the plea hearing held in district court:

> With regard to all of the current counts, we would add an additional count to each of those charges, that being disorderly conduct by reason of intoxication. Upon pleas to that, we would move to dismiss the other charges, with the understanding that after verification by the probation department, restitution would be joint and several in an amount not to exceed 7,000 dollars, that to be verified by medical bills and estimates to be presented to the probation

---

[1] MCL 750.84.

[2] MCL 750.81.

[3] MCL 750.167(1)(e).

department. There will be a release from further criminal and civil liability for both the Comstock Bar, and the Lambs, and other victims. Mr. and Mrs. Verhil, and Mr. Balcom would be required to have no contact with the bar, or any of the victims. We would recommend community service in lieu of any jail, as well as fines and costs, and a delay of sentence up to 90 days, both to verify damages, and to make sure that those damages are paid. If the damages have not been paid at that point, we would recommend probation solely for the purpose of securing the payment of damages. If the damages have been paid, we would not recommend any additional penalty.

After the prosecutor's remarks, the district court expressed some concern about its ability to release plaintiff from any subsequent civil liability: "I can make an order that of course this is going to satisfy the criminal matters, but as far as civil is concerned, I can't relieve the bar[4] of any civil liability on the case," the court explained. The district court then questioned C. Mitchell Lamb and his wife Robin Lamb, two of the victims of the bar fight who were present at the hearing. The Lambs indicated that the plea agreement was acceptable to them. Thereafter, plaintiff entered, and the court accepted, a plea of no contest to the disorderly conduct charge. No written plea agreement was ever prepared or entered.

Plaintiff's sentencing hearing was held a little over four months later. The Lambs were present with their attorney. Plaintiff was represented by Tonya Krause, who was standing in for Zambon. Before sentencing, the district court addressed the Lambs:

---

[4] We conclude that the court's reference to "the bar" is a reference to the Comstock Bar, i.e., the court expressed concern that it "can't relieve the [Comstock] bar of any civil liability." We believe this interpretation is in keeping with the fact that the Comstock Bar was not charged in the criminal matter before the district court.

I'm going along with the agreement made between the Prosecutor's office and what—and what you all said in reducing this case and so on. . . . I know you had medical damages, and I know you're waiting for the money for the dental, and we're going to try to get some of that to you today, all right, but is there anything else?

Mr. Lamb responded "No" to this inquiry. The court determined that plaintiff, Tom Verhil, and Jenna Yob Verhil each individually owed $2,703.20 in restitution. Plaintiff indicated that he was going to pay his share of the restitution that same day.

In August 1995, the Lambs filed in circuit court a civil suit against plaintiff, the Verhils, and the Comstock Bar. Plaintiff moved for summary disposition under MCR 2.116(C)(4) and (C)(7), arguing, in part, that the Lambs' suit was barred by the plea agreement and the subsequent payment of restitution. At the hearing on the motion, the circuit court indicated that while it did not believe that a plea agreement had to be in writing in order to be valid, it nonetheless had concern over the propriety of having a prosecutor involved in negotiating a release from civil liability. After hearing further argument, the circuit court issued its opinion from the bench[5] denying the motion for summary disposition on public policy grounds:

I personally have been a prosecutor . . . . And as I previously stated the prosecutor does not . . . represent the victims. The prosecutor functions almost as a quasi judicial figure and the charge of the prosecutor is to do what is appropriate and what is just under the circumstances both to the victim and to the defendant . . . . And it is my opinion

[5] No written order or opinion was issued by the circuit court. The absence of such a document is the basis of one of plaintiff's two claims of malpractice. See discussion *infra.*

that a prosecuting attorney is not the proper party to broker a release of a civil lawsuit. . . . [I]n my opinion the proper method to resolve the problem would be to deal with the victim or the victims' attorney and to work out between the two of them a settlement and a subsequent release, either in written form or put on the record, so, in short, what I'm saying is that the prosecutor should be kept out of the loop in terms of resolving a private civil lawsuit, and here, based on this record, the only statement of the settlement concerning the civil liability is that made by the prosecutor, so it is my opinion that this release—that there is no valid release under public policy grounds.

After the case was mediated and an award to the Lambs of $600 was refused, it was removed for jury trial in the district court. The jury found for Robin Lamb in the amount of $69,000, and in favor of C. Mitchell Lamb for $8,000. Plaintiff's appeal to the circuit court was denied because the court's decision to deny plaintiff's motion for summary disposition "was never memorialized by the entry of an order denying the motion . . . . The absence of such an order constitutes abandonment of the issue." Plaintiff's subsequent applications for leave to appeal in both this Court and our Supreme Court were denied.

Subsequently, plaintiff filed his malpractice complaint and jury demand in circuit court. Plaintiff alleged that defendants committed malpractice by (1) failing to obtain a valid written release of civil liability in the underlying criminal matter, and (2) failing to have the circuit court enter an order denying his motion for summary disposition in the civil case filed by the Lambs. Defendants filed a motion for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that plaintiff's lawsuit should be dismissed because (1) it was barred by the applicable statute of limitations, (2) defendants did not have a duty to

secure a written release in the criminal case, and (3) defendants did not have a duty to secure a written order denying plaintiff's motion for summary disposition in the Lambs' civil case.

At the hearing on defendants' motion, the circuit court rejected defendants' statute of limitations argument. The court indicated, however, that it had serious concerns regarding plaintiff's claim based on the criminal case. Citing MCL 750.149, Michigan's compounding statute, the court asked plaintiff, "are you not claiming that Mr. Zambon was negligent for not doing a better job of committing a crime?" Plaintiff's counsel acknowledged that he had not researched MCL 750.149, given that it had not been raised by defendants. He then asked "for a week or two to do the necessary research to see if there is any caselaw which would impact on the argument." No extension was granted by the court. The court also rejected plaintiff's argument that defendants were negligent for not getting a written release. "I must admit," the court stated, "I've read the plea. The Judge is asking all the victims, 'Is this okay with you?' I can't imagine anything more explicit than that establishing that, indeed, there was a release."

Plaintiff first argues on appeal that the circuit court erred in dismissing his claim based upon Zambon's failure to memorialize in writing the circuit court's denial of his motion for summary disposition in the case filed by the Lambs. Specifically, plaintiff asserts that the court's conclusion that civil releases such as the one involved in the case at bar are invalid under MCL 750.149 was erroneous. We agree. Resolution of this issue rests on interpreting the compounding statute, which we do de novo. *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001). "The overriding goal

guiding judicial interpretation of statutes is to discover and give effect to legislative intent. The starting place for the search for intent is the language used in the statute." *Bio-Magnetic Resonance, Inc v Dep't of Pub Health*, 234 Mich App 225, 229; 593 NW2d 641 (1999) (citations omitted). "If the language of the statute is clear and unambiguous, then no further interpretation is required. However, judicial construction is appropriate when reasonable minds can differ with regard to the meaning of the statutory language." *Benedict v Dep't of Treasury*, 236 Mich App 559, 563; 601 NW2d 151 (1999) (citation omitted).

Section 149 reads:

> Any person having knowledge of the commission of any offense punishable with death, or by imprisonment in the state prison, who shall take any money, or any gratuity or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal such offense, or not to prosecute therefor, or not to give evidence thereof, shall, when such offense of which he has personal knowledge was punishable with death, or imprisonment in the state prison for life, be guilty of a felony; and where the offense, of which he so had knowledge, was punishable in any other manner, he shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 1 year, or by fine of not more than 500 dollars.

With only minor stylistic changes, this statute has remained the same since 1871.[6] See 1871 CL 7672. Despite this long history, only a handful of cases have ever cited the statute in any of its incarnations. The only published case we have been able to find in Michigan citing MCL 750.149 is *People v Vincent*, 94

---

[6] We note that the statute still contains a nugatory reference to the death penalty.

Mich App 626; 288 NW2d 670 (1980). In dicta, *Vincent* stated that it is "apparent" that under the statute, "the acceptance of money or some other thing of value [is] . . . an important aspect of a defendant's culpability in concealing the felony. Indeed, this statute would appear to indicate that actually concealing the felony is of less importance than agreeing or promising to do so for value." *Id.* at 633, n 5. These statements identify two elements of the offense: the receipt of consideration and an agreement to conceal the offense.

1871 CL 7672 was cited in *Snyder v Willey*, 33 Mich 483 (1876). At issue in *Synder* was the enforceability of a promissory note given by the defendant to suppress a criminal prosecution of his son-in-law. *Id.* at 485-486. When the defendant refused to honor the note, the plaintiff sued. 1871 CL 7672 was cited by *Snyder* as support for the following proposition: "The finding settled beyond all question, that the writing sued on was based in part in an illegal consideration, and hence was not enforceable by the promisee, who was party to such illegality." *Snyder, supra* at 494-495. This also addresses the consideration element of the offense.

A few other Michigan cases have spoken of the offense either as it was defined at common law or without making any distinction of whether the Court's observations stemmed from the statute or the common law. For example, *Van Ness v Hadsell*, 54 Mich 560; 20 NW 585 (1884), held that it is not compounding a felony for a county treasurer to account for moneys as received from his predecessor that had not in fact been received, while assuming their payment upon the predecessor's assurance that he will make the amount good if his accounts are incorrect. *Id.* at 563. In *Koons v Vauconsant*, 129 Mich 260; 88

NW 630 (1902), the plaintiffs sought to invalidate a mortgage they claimed was executed under the threat that their son would be arrested if they did not execute the document. *Id.* at 261. The *Koons* Court concluded that the defendants had "availed themselves of the persuasive influence of the fear of prosecution of the son . . . ." *Id.* at 262. "The arrangement," the Court continued, "was to all intents and purposes an agreement to compound an alleged felony." *Id. Groening v Nowlen*, 369 Mich 28; 118 NW2d 998 (1963), involved a "suit in equity [that] was brought by [the] plaintiff in the circuit court of Berrien county to set aside the deed given by him to defendants on the alleged grounds that the consideration therefor involved the compounding of a felony." *Id.* at 30. The *Groening* Court made the following observation: " '[T]he law punishes those who compound a felony. As a consideration for an undertaking, a promise not to prosecute a felony is illegal and void.' " *Id.* at 35, quoting *Koons, supra* at 263.

In *People v Kyllonen*, 402 Mich 135, 140; 262 NW2d 2 (1978), our Supreme Court was presented with the issue whether the then-current version of MCL 750.535 "provide[d] an alternate statute under which thieves could be convicted . . . ." *Kyllonen* defined the common-law crime of compounding a felony in this manner: "Agreeing not to report the commission of a known felony in exchange for some valuable consideration." *Kyllonen, supra* at 143, n 9. This statement of the law recognizes a third element that has been implied in all the other cases cited above, i.e., knowledge of the commission of a crime.

All these three elements are present in the compounding statute, which we conclude is a codification of the offense at common law. Given the case law and

the clear language of the statute, we conclude that in order to sustain a charge of compounding a felony under the statute, the following must be established: (1) the existence of an agreement to not prosecute or to conceal a crime, or to decline to provide evidence in a criminal prosecution; (2) knowledge of the commission of a crime; and (3) the receipt of some valuable consideration. See also 4 Torcia, Wharton's Criminal Law (15th ed), § 573, p 287 ("At common law, a person is guilty of compounding a felony when he agrees, in consideration of money, property, or some other thing of value, to refrain from reporting or prosecuting the felony, or, if there is a prosecution, to refrain from participating therein as an informant or witness."). The language of § 149 also makes clear that it is not the person who offers the consideration but the person who accepts it who has committed the offense.

The circuit court in the case at bar concluded that a claim of malpractice could not be sustained against Zambon for the attorney's failure to secure a written order denying plaintiff's motion for summary disposition in the civil case filed by the Lambs because the plea agreement itself was void for illegality. "To the extent [plaintiff] . . . is complaining that defendant attorney was negligent for not better negotiating and/or memorializing a release from civil liability," the circuit court observed, "plaintiff is complaining that said defendant did not do a better job of violating MCL 750.149 . . . ." We conclude that the circuit court was mistaken.

The only parties who received anything that would qualify as valuable consideration in the case at bar were the victims, who each received nearly $3,000 in restitution. There is no evidence, however, that this

benefit was conferred upon the victims in exchange for their promise to conceal any evidence or to decline participation in any prosecution of plaintiff. Indeed, the victims had been actively participating in the criminal process up to the point of the plea. What the victims did agree to forego was a civil case based on the acts of plaintiff. The statute does not criminalize such behavior. Additionally, plaintiff was not allowed to avoid criminal prosecution altogether; rather, he was allowed to plead no contest to a misdemeanor charge of disorderly conduct.

If the agreement is considered to be a third-party beneficiary contract, with the consideration having flowed to the victims, then the issue becomes whether the consideration was given in exchange for Zambon's promise not to prosecute or to somehow frustrate the prosecution through an improper concealment of evidence. Clearly, Zambon had no authority to prosecute his own client, and there is no evidence that Zambon attempted to improperly frustrate the state's prosecution of his client.

The circuit court also questioned the propriety of the prosecutor's involvement in securing the civil liability release. We conclude that Zambon could not be considered to have violated or attempted to violate the compounding statute on the basis of his actions assisting in this process, because we find the actions of the prosecutor are not improper. Defendants maintain on appeal that the impropriety of the prosecutor's actions is recognized in case law. In support of this proposition, defendants cite case law that does not specifically address the situation at bar. Rather, defendants cite cases holding that it is improper for a prosecutor to negotiate with a defendant for an agreement releasing a government or its employees from

civil liability in exchange for dropping a criminal prosecution against the defendant. See, e.g., *Stamps v Taylor*, 218 Mich App 626, 630; 554 NW2d 603 (1996); *Gray v Galesburg*, 71 Mich App 161, 162-163; 247 NW2d 338 (1976). The confluence of private and public interests implicated by the *Stamps*-style release-dismissal agreement is not present when the civil release does not apply to a government or its employees.

If the principles of *Stamps* and *Gray* are stretched to encompass the situation at bar, we still see no impropriety. *Stamps* held that release-dismissal agreements are not invalid per se. *Stamps, supra* at 635. Rather, their validity is tied to the circumstances in which they arose. *Id.* at 632. Examining the circumstances in the case at bar, we find no evidence that the agreement was involuntary, no evidence of prosecutorial misconduct,[7] and no evidence that enforcement of the agreement will adversely affect relevant public interests.[8] *Id.* A prosecutor must not be prevented from adjusting or even dropping a prosecution when restitution has been arranged, if the prosecutor believes that such an arrangement best serves the interests of justice.

In sum, we see no violation of the compounding statute by either the victims or the prosecutor. Also, Zambon did not violate the statute either directly or as a result of his aiding in the plea negotiations.

The circuit court also concluded that because Zambon preserved the issue by arguing the merits of

---

[7] To conclude that the prosecutor engaged in misconduct because he engaged in the negotiations simply begs the question.

[8] We also note that the release was ratified by the victims present at plaintiff's sentencing.

the agreement, a claim of malpractice could not be maintained. The circuit court's reasoning misses the point. It is true that by raising the issue of the validity of the release, Zambon preserved the matter for appeal. However, once the case was removed to district court, the door to appellate review of the circuit court's ruling was effectively closed by the lack of a written order or judgment. The question whether Zambon should have either anticipated the removal or taken steps to document the circuit court's holding after removal occurred is a close enough question to render summary disposition inappropriate.

We reject plaintiff's contention that the circuit court erred in dismissing his claim of malpractice based on Zambon's failure to secure a written plea agreement in the underlying criminal matter. As the circuit court concluded, the plea agreement did not have to be memorialized in a writing to be binding. MCR 2.507(H).[9] Further, we conclude that this claim of malpractice is barred by the statute of limitations. A plaintiff has two years from the date of accrual of a claim to file a claim of malpractice. MCL 600.5805(5); *Ohio Farmers Ins Co v Shamie (On Remand)*, 243 Mich App 232, 236; 622 NW2d 85 (2000). Accrual in this case is governed by MCL 600.5838(1), which provides in pertinent part:

---

[9] MCR 2.507(H) reads:

An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

> [A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudo-professional capacity as to the matter out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

"A lawyer discontinues serving a client when relieved of the obligation by the client or the court, or upon completion of a specific legal service that the lawyer was retained to perform." *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994) (citations omitted).

Here, "the matter out of which [this] . . . claim of malpractice arose" was the criminal case. Whether Zambon ceased serving plaintiff after the sentencing or on the day of the dated notice that plaintiff's file was being closed in the criminal matter, this claim of malpractice was untimely. Additionally, plaintiff's claim is not saved by the six-month discovery rule. MCL 600.5838(2). Plaintiff knew or should have known that his claim for malpractice existed at the time the circuit court ruled from the bench that the plea agreement was invalid because it was not set forth in writing.[10]

In conclusion, we hold that the circuit court did not err in summarily dismissing plaintiff's claim of malpractice based on his attorney's failure to secure a written plea agreement in the criminal case. However, the circuit court did err in summarily dismissing plaintiff's claim based on his attorney's failure to

---

[10] Plaintiff's claim based upon the failure to secure a written order denying plaintiff's motion for summary disposition in the civil case filed by the Lambs was not untimely.

secure a written order denying plaintiff's motion for summary disposition in the civil case filed by the Lambs.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.