Filed 9/24/14  P. v. Mullins CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C066082 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F07294) |
| v. | |
| WALTER CALYTON MULLINS, | |
| Defendant and Appellant. | |

Following a jury trial, defendant Walter Clayton Mullins was convicted of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)),[1] making criminal threats (§ 422), and disobeying a court order (§ 166, subd. (a)(4)).  The trial court later found true allegations that defendant was convicted in New Jersey for crimes that constitute strike offenses in California, a robbery and "aggravated assault with a deadly weapon."  The trial court sentenced defendant to 50 years to life in state prison, plus 10 years.

---

[1]    Undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

1

Defendant contends that the trial court erred in finding his 1992 New Jersey conviction for second degree robbery qualified as a strike under California law. Defendant also contends the trial court erred in finding it had no discretion to order concurrent three strike sentences for counts 2 and 3.

We agree that the trial court erred in finding that the 1992 New Jersey robbery conviction qualified as a strike prior. We reverse the judgment in part, and remand for a new trial on the strike allegation pertaining to that prior conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Charges and Allegations

Defendant was charged with attempted premeditated murder (Pen. Code, §§ 664/ 187, subd. (a) & 1192.7, subd. (c) (count 1)), corporal injury on a cohabitant (§ 273.5, subd. (a) (count 2)), criminal threats (§ 422 (count 3)), and disobeying a court order (§ 166, subd. (a)(4) (count 4)). In connection with count 2, it was alleged that defendant inflicted great bodily injury under circumstances involving domestic violence. (§ 12022.7, subd. (e))

It was further alleged that defendant had prior convictions in the State of New Jersey that qualified as serious felony offenses and strike offenses in California (§§ 667, subd. (a), 1192.7, subd. (c), 667, subds. (b)-(i), & 1170.12). The prior convictions were a 1992 conviction for robbery and a 1997 conviction for "aggravated assault with a weapon."

### Trial Evidence

Defendant and Kathie G. began dating in the summer of 2009. Initially homeless, they soon moved into an apartment together, but their relationship was violent. They frequently argued and their fights often became physical.

In September 2009, defendant and his friends were drinking beer outside a homeless mission. Kathie stood outside the same mission, talking to another woman,

2

Jessica. Defendant began to pace, telling Kathie that it was time to leave. Jessica asked defendant why he was angry with Kathie. Defendant responded by hitting Jessica.

A short time later, Kathie started to leave the mission on her bicycle. As she did, defendant hit her in the mouth. Police officers who were parked nearby saw the assault, jumped out of their car, and arrested defendant.

A couple of days later, Kathie saw defendant in court. Defendant looked at Kathie and made a "slashing motion across his throat." Kathie asked a mutual friend, Theo, what that meant. Theo told her it meant that the relationship between Kathie and defendant was over.

A few days later, when Kathie returned to their apartment after dark, defendant, who had been released from the jail, jumped out of nowhere grabbed her by the hair, dragged her down the apartment hallway, and began to beat her. As he dragged her, defendant said "you are dead, you dying tonight" and repeatedly hit Kathie in the head and face. Defendant also said, "You are dead, bitch, you gonna be a dead bitch" while continuing to strike Kathie in the hallway. Kathie told defendant she loved him and asked him why he was doing this.

Continuing the assault, defendant dragged Kathie into the bathroom and turned on the bath water. He then threw Kathie into the bathtub and continued to hit her. Kathie struggled to get out of the bathtub but defendant held her face under water. Believing she was going to die, Kathie fought for her life. However, she succumbed. The last thing Kathie remembered about the assault was being under water, her arms stretched out, and giving up.

Meanwhile, the next door neighbor heard Kathie screaming, a banging noise and the water splashing. The neighbor called the police. Water from the bath tub also began pouring out of the ceiling vent in the apartment directly below.

The police soon arrived. Defendant opened the door to the apartment and was immediately detained. He told the police that Kathie was in the bathroom. One of the

3

officers asked whether she was okay and defendant replied, "Yeah, she's fine. I just beat her ass, that's all." The police found Kathie sitting on the bathroom floor, propped up against the side of the bath tub. Kathie was "obviously injured" and only "partially coherent."

Kathie later regained consciousness in the hospital. She had a concussion, a fractured nose, a damaged eye, and her "face was as big as a basketball." Hair had been pulled from Kathie's scalp. As a result of the beating, Kathie suffered permanent hair loss, anxiety attacks, and headaches.

### Verdicts and Sentencing

The jury found defendant guilty of count 2, corporal injury on a cohabitant, count 3, criminal threats and count 4, disobeying a court order. The jury could not, however, reach a verdict on count 1, attempted willful, deliberate and premeditated murder or the great bodily injury allegation in count 2, and the court declared a mistrial as to each. In a bifurcated proceeding, the trial court later found true the two prior strike convictions.

At the sentencing hearing, the prosecution dismissed count 1, attempted murder, and the great bodily injury enhancement allegation in exchange for defendant's withdrawal of his *Romero*[2] motion. According to defense counsel, the prosecution's agreement to dismiss the attempted murder charge and great bodily injury allegation was conditioned on the defendant being "sentenced to life pursuant to the three strikes law today."

Defendant was sentenced to an aggregate term of 50 years to life for the two felony convictions pursuant to his two strike convictions (§ 667, subd. (e)(2)(A)(ii); 1170.12(c)(2)(A)(ii)). He received an additional 10 years in state prison for the two prior serious felony convictions (§ 667, subd. (a)). As for the misdemeanor, violation of a restraining order, the court sentenced defendant to 180 days in the county jail. Defendant

---

**2** *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

4

was ordered to pay various fines and fees and was awarded 396 days of custody credit (344 actual and 52 conduct).

## DISCUSSION

### I. The New Jersey Robbery Conviction

Defendant claims the trial court erred in finding his 1992 New Jersey conviction for second degree robbery qualified as a strike under California law. We agree there was insufficient evidence to support that finding.

### A. Applicable Legal Principles

The three strikes law provides in pertinent part: "[A] prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (§ 667, subd. (d)(2); see also § 1170.12, subd. (b)(2).)

Thus, a prior conviction in another jurisdiction qualifies as a strike if it was for an offense that: (1) is punishable by imprisonment in state prison if committed in California; and (2) includes all the elements of the particular felony as defined in section 667.5, subdivision (c), or section 1192.7, subdivision (c). (§§ 667, subd. (d)(2) & 1170.12, subd. (b)(2).)

To make this determination, the trier of fact may look to the entire record of conviction. (*People v. Myers* (1993) 5 Cal.4th 1193, 1201 (*Myers*).) The record that may be examined includes "a change of plea form executed by the defendant in the previous conviction [citation], the charging documents and no contest plea reflected in a minute order [citation], a complaint and [citation] forms admissions [citation], a reporter's transcript of the defendant's guilty plea together with the information [citation], a probation report [citation], and a preliminary hearing transcript [citation]." (*People v. Henley* (1999) 72 Cal.App.4th 555, 560.) The record also includes appellate court

opinions affirming the conviction. (*People v. Woodell* (1998) 17 Cal.4th 448, 455; *In re Richardson* (2011) 196 Cal.App.4th 647, 667.)

The court may consider "evidence found within the entire record of the foreign conviction" only to the extent it is "not precluded by the rules of evidence or other statutory limitation." (*People v. Myers*, *supra*, 5 Cal.4th at p. 1201.)

The indictment may be used to establish the facts of the underlying criminal conduct if the defendant pleads guilty to the charges in the indictment. (*People v. Hayes* (1992) 6 Cal.App.4th 616, 624.) The indictment, however, may not be sufficient. A judgment that does not "unambiguously incorporate any specific elemental fact enunciated in the . . . indictment," cannot be used to prove the facts of the underlying crime. (*People v. Reynolds* (1989) 211 Cal.App.3d 382, 390.)

## B. Background

To prove the prior convictions in the bifurcated trial heard by the court, the prosecutor introduced the following documents: (1) the indictment charging defendant with second degree robbery, third degree theft from the person, and aggravated assault; (2) the judgment of conviction and order for commitment; (3) an order for presentence investigation, noting defendant's conviction for second degree robbery; and defendant's written plea form.

Only the indictment set forth any details underlying the robbery. The indictment stated that "[Defendant] on or about September 19, 1992, at the City of Atlantic City, in the County of Atlantic, and within the jurisdiction of this Court, in the course of committing a theft, did inflict bodily injury upon Showboat Casino Security Officer Cynthia Teleshkin and/or Showboat Casino Employee Dhansykhbhai Patidar, contrary to

the provisions of N.J.S.A. 2C:15-1a(1),[3] and against the peace of this State, the government and dignity of the same."[4]

In the trial court, the prosecution argued the record of conviction established that "during a theft from the Showboat Casino, Defendant used force and violence against at least one Showboat casino employee." The prosecution pointed out that even if defendant used force and fear for the first time during the escape, he would still be guilty under California law, because a theft is not complete until the thief reaches a place of temporary safety and if the thief uses force or fear while escaping, then the theft escalates into a robbery. (*People v. Gomez* (2008) 43 Cal.4th 249, 255.)

The prosecution argued that the only reasonable interpretation of the evidence presented by the charging document is that defendant was stopped by two employees of the Showboat Casino, one of whom was a security officer, while taking casino property. Otherwise, there would be no reason for the charging document to note the employment

---

[3] Section 2C:15-1 reads as follows: "Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he: [¶] (1) Inflicts bodily injury or uses force upon another; or [¶] (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or [¶] (3) Commits or threatens immediately to commit any crime of the first or second degree. [¶] An act shall be deemed to be included in the phrase 'in the course of committing a theft' if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission."

[4] Defendant was also charged with the following offenses that were dismissed as part of a plea agreement: Count two theft from the person--third degree, in that "[Defendant] on or about September 19, 1992, at the City of Atlantic City, in the County of Atlantic, and within the jurisdiction of this Court, did unlawfully take moveable property from the person of Dhansukhbhai Patidar, with the purpose to deprive the owner thereof, contrary to the provisions of N.J.S.A. 2C:20-3, and against the peace of this State, the government and dignity of the same."

Count three, aggravated assault--second degree, in that "[Defendant] on or about September 19, 1992, at the City of Atlantic City, in the County of Atlantic, and within the jurisdiction of this Court, did attempt to cause serious bodily injury to Cynthia Teleshkin, contrary to the provisions of N.J.S.A. 2C:12-1b(1), and against the peace of this State, the government and dignity of the same."

7

status of the named victims.  The prosecution pointed out that business employees may be robbery victims of business property when they have constructive possession of the property.  The prosecution argued that the property defendant stole must have been casino property, because there was no other reason for the indictment to refer to the employment status of the two victims.

The defense argued there is no evidence that the property taken was in the possession, actual or constructive, of the victims named in the indictment.  The defense suggested the property could have been the property of a casino patron or somebody walking by the casino and injury was inflicted on the casino employees while they tried to retrieve the property stolen from that person.

The prosecution argued it was not reasonable to infer the property was that of a casino patron, especially since the charging document made no reference to any private person being victimized.  Had the owner of the property not been associated with the casino, then that person should have been listed as the robbery victim.

Ultimately, the trial court agreed with the prosecution, concluding that the charging document presented circumstantial evidence from which inferences could be drawn.  The court reasoned that it was obligated to accept reasonable interpretations of the evidence and reject the unreasonable.  The court indicated that it was reasonable to infer from the language in the charging document that the property was in the constructive possession of the listed victims.  The defense was unable to point out any other reasonable interpretations of the language in the charging document referencing the employment status of the victims and could think of no others on its own.  Finding no reasonable interpretation pointing to innocence, the court found that the evidence established that defendant's New Jersey robbery conviction qualified as a California strike conviction.

### C. Analysis

When the record does not disclose the facts of the offense actually committed, the court will presume the prior conviction "rested only on the least statutory elements necessary for a conviction." (*Myers*, *supra*, 5 Cal.4th at p. 1200.) Thus, the comparison is between the least elements necessary for the crime under the other state's statute and the elements of the California offenses categorized in the three strikes law.

The California Supreme Court has previously determined that the robbery statute in New Jersey is broader than section 211. (*People v. Nguyen* (2000) 24 Cal.4th 756, 763-765 (*Nguyen*).) Adopting the Model Penal Code approach to robbery, New Jersey's statute, unlike section 211, includes "injury or threat to one other than the custodian of the property." (*Nguyen*, *supra*, 24 Cal.4th at p. 764.) Also, there is no element of asportation or a requirement that the property be taken from the person or immediate presence of the victim as required by section 211. (*Id.* at pp. 763-764.)

Even assuming the evidence was sufficient to infer that casino property was taken by force or fear from a casino employee, there is no evidence that the property was taken from the person or immediate presence of the victim. Furthermore, even though only a "very slight movement" is required to prove asportation (*People v. Pham* (1993) 15 Cal.App.4th 61, 65), there is no evidence from which asportation can be inferred. It is, therefore, possible for defendant to be convicted of robbery in New Jersey for criminal conduct that would not constitute robbery under Penal Code section 211. (See *Nguyen*, *supra*, 24 Cal.4th at pp. 763-765.) Accordingly, without additional facts regarding defendant's crime, there is insufficient evidence that defendant's prior conviction is a serious felony under California law.

The People contend the necessary facts can be found in counts 2 and 3 of the indictment. Notwithstanding that both counts were dismissed, the People contend there is "no rational reason" to ignore the grand jury's charges, "especially since they dovetail with those in count 1 to illuminate [defendant's] robbery."

9

We disagree. The rational reason is that these charges were dismissed and there is no admission by defendant to the charges. Nor is there any indication in the record of conviction that defendant left open the possibility that the dismissed charges could be used against him for sentencing purposes. (See *People v. Harvey* (1979) 25 Cal.3d 754, 758 [Implicit in such a plea bargain, is the understanding (in the absence of any contrary agreement) that *defendant* will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count.]; *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1510 [concluding that there is no authority to use dismissed counts to determine whether a prior offense qualifies as strike even when there is a *Harvey* waiver].)

We remand the case to the trial court with directions that the People be afforded the opportunity to present sufficient evidence to establish that the 1992 New Jersey robbery conviction qualifies as a strike. (*People v. Barragan* (2004) 32 Cal.4th 236, 239 ["[R]etrial of a strike allegation is permissible where a trier of fact finds the allegation to be true, but an appellate court reverses that finding for insufficient evidence"].)[5]

## II. Consecutive Sentencing

Defendant also claims the trial court "erred in finding it had no discretion to order concurrent three strike sentences" for counts 2 and 3. Whether the trial court erred in

---

[5]     The probation report in this case provides the following description of the New Jersey robbery conviction: "The defendant walked into the Showboat Casino and attempted to steal $300.00 in cash from a change-person. The change-person refused to release the money and the defendant punched him in the mouth. He attempted to flee the casino but a security officer tried to get in the way and she was punched in the head and rendered unconscious." At sentencing in this case, defense counsel asked the court to strike the summary in the probation report and then stated, "I just want to be clear that that is not part of the record of conviction that was introduced in this trial nor is it part of the record of conviction for this case." The trial court declined to strike the summary, but made clear it was not information it had had at the time it ruled that the New Jersey robbery qualified as a serious felony.

10

finding it had no discretion, the trial court also determined that if it did have discretion, it would impose consecutive sentences. Defendant contends "that, under the facts of this case, it would be an abuse of discretion not to order concurrent sentences . . . ." Because we vacate defendant's sentence on other grounds, we need not address this claim.

## DISPOSITION

The judgment is reversed to the extent it is based on the trial court's finding that defendant's 1992 New Jersey robbery conviction constituted a strike offense, and defendant's sentence is vacated. The People shall have 60 days after the remittitur is filed in which to give notice of their intent to seek retrial of the prior serious felony conviction allegation. If the People give such notice, the court shall hold a new trial on the prior serious felony allegation. If the People fail to give such notice, the court shall resentence defendant accordingly. In all other respects, the judgment is affirmed.


       MURRAY       , J.


We concur:


     RAYE      , P. J.


     NICHOLSON   , J.


11